[Civ. No. 7839.   Third Dist.   Feb. 27, 1951.]

PEGGY JOANN SUMRALL, a Minor, etc., et al., Respondents, v. GEORGE S. BUTLER et al., Appellants.

[Civ. No. 7840.   Third Dist.   Feb. 27, 1951.]

JANIS SLINGSBY, a Minor, etc., Respondent, v. GEORGE S. BUTLER et al., Appellants.

Harry W. Falk, Falk & Falk, and Cooley, Crowley & Gaither for Appellants.

Edward E. Craig, Hoberg & Finger and Burton & Filene for Respondents.

VAN DYKE, J.—On May 8, 1948, an accident occurred in Humboldt County on Highway 101, between the towns of Arcata and Crescent City, wherein an automobile driven by Melvin D. Slingsby, who was accompanied by his wife, Neva Slingsby, and Peggy Sumrall, her minor daughter by a former marriage, was struck by lumber from an overturning unit of a tractor and trailer owned by defendant and appellant George S. Butler. The tractor and trailer were being driven by defendant and appellant Raymond L. Chahon. As a result of that accident Melvin and Neva Slingsby were killed and Peggy Sumrall was injured. Melvin and Neva left surviving them their minor daughter Janis. Neva also left surviving her, Peggy Sumrall.

An action was filed by the minors Peggy and Janis to recover damages suffered by them through the death of their mother, Neva, and in a second count in the complaint in that action Peggy sought damages for the personal injuries suffered by her in the accident. A second action was filed by Janis to recover damages suffered by her from the death of her father, Melvin. Both actions were consolidated for trial. A jury returned the following verdicts: In favor of Peggy and

Janis for the death of their mother, $45,000; in favor of Peggy for her personal injuries, $1,500; and in favor of Janis for the loss of her father, $29,500. Judgments were accordingly entered. Motions for new trial were made as to all three awards and the trial court ordered that new trials be granted unless the following remissions of damages should be made: As to the judgment in favor of the two minors for the death of Neva a $5,000 remission; as to the judgment in favor of Peggy for personal injuries a $500 remission; as to the judgment in favor of Janis for the loss of her father a $4,500 remission. Consents were duly filed to such remissions and motions for new trial were denied. Defendants appealed from all three judgments, presenting the appeal upon a consolidated reporter's transcript and consolidated briefs.

At the beginning of the trial the defendants admitted that Chahon was an employee of Butler, acting within the scope of his employment at the time of the accident; that the deaths of Melvin and Neva Slingsby were proximately caused by the negligent operation of the defendant Butler's vehicles; that Peggy Joann Sumrall sustained injuries as a result of the same negligent acts; that the vehicles involved in the accident collided with great force and violence.

The first witness sworn on behalf of plaintiffs was Martin Sumrall, the father of Peggy. He testified as to the injuries suffered by her as he observed them the night of the accident and thereafter. He said when he saw her she was suffering from shock and continued so to suffer for some time; that she vomited several times while in the hospital and since that time had difficulty in sleeping and showed fear of passing trucks when on the highway; that on the night of the accident she complained of pain in her stomach and pain in her right knee; that she had a cut in her chin requiring four stitches, and her knee was swollen, soft and puffy; that she was in the hospital five days. The next witness was Dorothy Vaughan, a nurse at the hospital, who produced the hospital records concerning the injuries Peggy received and the treatment of them. The doctor's diagnosis, as shown by these records, referred to shock, vomiting, the administration of penicillin, and that the child was suffering from a cold; pain in the abdomen was noted. The doctor's notes stated that the injuries were not serious, considering what had happened, and that the abdominal pain had subsided before discharge from the hospital.

The next witness sworn was Lonnie Hill, a traffic officer

who had gone to the scene of the accident. He testified, before objection was made, that the bodies of Neva and Melvin Slingsby were in the automobile when he arrived, the death of both having already occurred. He described in detail the tractor, semitractor and trailer being driven by Chahon, and stated that it was one of the largest hauling rigs allowable upon the highway. He said the equipment had been loaded with green lumber at the time of the accident; that the accident happened on a curve. He was then asked concerning skid marks made by the truck and at that point counsel for the defendants objected to any further testimony concerning the accident, upon the ground that the foregoing admissions having been made, such testimony was inadmissible. After some discussion, the court ruled that it would admit evidence concerning the details of the accident, but would limit the application of such evidence to the action of Peggy for personal injuries and would instruct the jury that it was not to be considered for any other purpose. The court did so instruct the jury. Subject to the objection, the witness Hill then testified in substance as follows: That he photographed the skid marks he found, which the driver admitted were made by his equipment (the photograph was introduced in evidence); that the marks extended 123 feet; that he photographed marks on the highway which indicated the point of impact between the truck and the automobile (the photograph was admitted in evidence); that he photographed the automobile (the photograph, admitted in evidence, showed the automobile in a ditch with a lot of lumber piled on top); that he took a close-up picture of the car (this photograph was placed in evidence and shows the forward part of the car badly crushed); that the Slingsby car had been knocked back 84 feet from the point of impact; that the trailer units of the truck were overturned with the wheels in the air; that the trailer had been dragged by the tractor 312 feet from the point of impact before coming to a stop. The court instructed the jury that the photographs were in evidence for the purpose of showing the surrounding circumstances at the time of the accident and were to be considered only in the action of Peggy for her personal injuries and not for any other purpose.

Appellants contend that the court erred in admitting the testimony of Officer Hill. They point out that at the beginning of the trial they made the admissions, hereinbefore set out; that Mr. Sumrall, the father of Peggy, as the first witness, narrated the injuries sustained by his daughter, which narra-

tion was supplemented by the testimony of the next witness, Mrs. Vaughan, the hospital nurse, and that the testimony thus given showed that Peggy had not been seriously injured. From all this they argue that the court erred in admitting over their objection the testimony of Hill and they ask this court to apply the rules laid down in *Fuentes* v. *Tucker*, 31 Cal.2d 1 [187 P.2d 752]. The opinion in that case may, so far as pertinent here, be summarized as follows: One of the functions of pleadings is to limit the issues to narrow proof; if the facts alleged in the complaint are not controverted, they are not in issue and no evidence need be offered to prove their existence; evidence which is not pertinent to the issues raised by the pleadings is immaterial and it is error to allow the introduction of such evidence; it follows therefore if an issue has been removed from a case that it is error to receive evidence which is material solely to the excluded matter; an admission of liability does not preclude a plaintiff from showing how an accident happened if such evidence is material to the issue of damages; in an action for personal injuries, where liability is admitted and the only issue to be tried is the amount of damage, the force of the impact and the surrounding circumstances may be relevant and material to indicate the extent of plaintiff's injuries; such evidence is admissible because it is relevant and material to an issue remaining in the case; in an action for wrongful death, the damages consist of the pecuniary loss suffered by plaintiffs in being deprived of the services, earnings, society, comfort and protection of deceased, and the manner in which the accident occurred, the force of the impact and the matters tending to show liability could have no bearing on these elements of damage; in a death case, therefore, when liability is not in issue, such matters are not material and admission of testimony concerning them is error.

The case of *Fuentes* v. *Tucker*, *supra*, was one wherein the admissions of liability were contained in the pleadings upon which the cause went to trial. In this case the admissions were made at the beginning of the trial, but in view of the completeness of these admissions we see no reason why the same rules would not be applicable on the death counts, particularly where, as here, the record clearly imports that the admissions were accepted and acted upon by both parties and the court, as withdrawing from the issues to be tried, all matters having to do with liability and as leaving to be tried only the issue of damages suffered by the respondents.

■ Notwithstanding all this, the presence in the case of the action of Peggy Sumrall for her personal injuries rendered admissible in her case any evidence material to the issue of the damages she suffered, and the admission of liability for these damages did not preclude her from showing how the accident happened if such evidence was material to that issue.

■ Appellants apparently sought to render such evidence immaterial by their admission that the collision between the vehicles involved was one of great force and violence, but this admission, we think, did not accomplish its purpose. One of the elements of damage pleaded by Peggy Sumrall in her cause for personal injuries (and denied by the answers) was that she had suffered great shock, and the admission that the collision was one of great force and violence did not and could not render immaterial and inadmissible other features of the accident which would be pertinent to that element of damage. Peggy was about 11 years old at the time of the accident. She was riding in the back seat of the car being driven by her stepfather. Her mother was in the front seat. Peggy was lying down and may have been sleeping just prior to the collision. Her mother and stepfather were killed, whether instantly or not does not clearly appear, but at least they were apparently, and may have been actually, dead within a few moments after the impact. The front part of the car in which they were riding was badly crushed and the extrication of their bodies was accomplished thereafter with difficulty. While not suffering severe physical injury, Peggy was imprisoned in the back portion of the car and could not be released for some time and then only by breaking out the back window and taking her out through the opening thus made. The probable combined effect upon her of this series of tragic and frightening events was fairly a matter to be placed before the jury in considering the extent of her personal injuries. These matters are not concluded, indeed are scarcely touched upon, by the bald admission that the impact between the vehicles was one of great force and violence. Evidence of all these matters, therefore, was material and admissible and could not have been excluded without error being committed, insofar as the proof of the extent of Peggy's personal injuries was concerned. In saying this, we are not implying that in this case the issue of damage from shock alone was the only element that rendered this testimony admissible as to the personal injury action. We specifically point it out as one clear example of why the testimony was admissible.

It was clearly admissible under the theory we have discussed. It is not necessary to extend the discussion with respect to the other elements of her personal injuries.

Conceding, as we think must be done from the record here, that the facts and circumstances of the accident were inadmissible under the rule laid down in *Fuentes* v. *Tucker*, *supra,* upon the issue of damages in the death actions, still the trial court had no other course open to it than to admit the evidence in proof of Peggy's personal injuries and to instruct the jury as it did that they were to consider the evidence for that purpose alone. It may be said, further, that respondents themselves moved the court that both actions be consolidated for the purpose of trial upon the ground that they grew out of the same transaction, and responsive thereto the court so ordered. No motion was made at any time for a separate trial as to the issues presented by the cause of action for the personal injuries of Peggy Sumrall.

Appellants complain especially in connection with their specification of error in the admission of testimony which we have discussed above that a certain photograph was introduced in evidence during the testimony being given by Officer Hill, which was a close-up picture of the Slingsby car as it came to rest after the collision, with lumber from the overturned trailer piled upon it. Concerning this picture they say that it gruesomely shows at least one of the dead in the vehicle. This picture they say was Exhibit No. 6 for plaintiff. An examination of all the photographs reveals that none shows either of the bodies of the decedents or any part of them.

Respondents complain as to each of the three verdicts that it was excessive and they claim that, to a prejudicial degree, an instruction given by the court was erroneous and contributed to the excess. At respondents' request the trial court gave an instruction concerning the matters the jury were to consider in fixing damages in the death actions. This instruction was taken from the Book of Approved Jury Instructions and is numbered 175b therein. It reads as follows:

"In determining pecuniary loss you may consider not only the financial support, if any, which each plaintiff would have received from the decedents, except for his or her death, but also the pecuniary value of the society, comfort, care, protection and right to receive support, if any, which each plaintiff has lost by reason of the death. In weighing these matters you may consider the age of the deceased and of each plaintiff; the physical condition of the deceased and of each plaintiff,

as it existed at the time of the death and immediately prior thereto; their respective expectancies of life, as shown by the evidence; the disposition of the deceased, whether it was kindly, affectionate or otherwise; whether or not he or she showed an inclination to contribute to the support of the plaintiffs or any of them; the earning capacity of the deceased, and such other facts shown by the evidence as throw light upon the pecuniary value of the support, society, care, company, and protection which the plaintiffs reasonably might have expected to receive from the decedents, had he or she lived.''

At the request of respondents the court further gave the following instruction upon the same general subject matter:

''In actions of this character the damages to be allowed may extend to all the pecuniary benefits which are reasonably expected to be received by the plaintiffs, embracing the period of expectancy of life common to the deceased and of the survivors. I instruct you that the expectancy of life of the deceased Melvin D. Slingsby at the time of his death was 38 and 61 hundredths years, according to the table of mortality. Plaintiff Janice Slingsby, therefore, was entitled to expect the comfort, services, society, protection, support of said deceased for the period of 38 and 61 hundredths years.

''I instruct you that the expectancy of life of the deceased Neva Slingsby at the time of her death was 36 and 88 hundredths years, according to the table of mortality. Plaintiffs Peggy Joanne Sumrall and Janice Slingsby, therefore, were entitled to expect the comfort, services, society, and protection of said deceased for a period of 36 and 88 hundredths years.

''This expectancy is not absolute. In this respect you may take into account all the evidence relating to the health and physical condition of the deceased and of the minor plaintiffs.''

Concerning this last instruction appellants say that by it the court invaded the fact-finding province of the jury. They say this portion of the instruction told the jury that the respective respondents had the legal right to the total expectancies of life mentioned in the tables.

There was evidence introduced concerning the condition of health of the decedents at and just prior to death, concerning their habits of living, the nature of their respective occupations and similar evidence, all of which bore upon, and would be properly considered by the jury when estimating, the probable life spans of the two individuals. In addition to this, there had been introduced the tables of mortality which bore

upon the same matter. By this instruction the trial court
did emphasize the evidence inherent in the tables and called
the jury's attention specifically to the probable life spans
"according to the table of mortality." It then stated that
because a certain span of years appeared in the tables as the
probable life span, therefore the respective plaintiffs were
"entitled to expect" during that period the benefits of the
continuation of the particular life, which benefits they had
lost by the wrongful infliction of death. We cannot approve
this singling out and emphasizing of the tables, followed by
language which was susceptible of interpretation by the jury
as taking from them their function of estimating the probable
life spans involved from all of the evidence, including the
tables. To tell a jury, in effect, that life spans as indicated
in the tables of mortality are conclusive would, of course,
be error; but we do not think the instruction given, fairly
construed, can be so interpreted. Thus the jury were told
that the indicated span was taken from the tables of mortality
and was in accordance therewith. We think that qualification
was intended by the court to apply to the following sentence
in which the jury were told that "therefore the plaintiffs
were entitled to expect benefits from the continuance of life
for that period." In other words, what the court intended to
say was that this sentence also was qualified as being in
accordance with the same tables. In the closing part of the
instruction the court fairly stated that the expectancy of life
according to the tables was not absolute and that in this
respect the jury must take into account all of the evidence
relating to the health and physical condition of the deceased
and of the minor plaintiffs. Clearly, the court here referred
to the evidence other than the tables which would bear upon
the probable span of the lives involved. While we do not, as
we have said, approve this form of instruction because of its
tendency to overemphasize the life spans indicated in the
tables of mortality, yet we do not believe that such error as
may be contained in the instruction would be ground for re-
versal in this case. After all, we are dealing here with a
matter which is one of common knowledge and concerning
which jurors need little, if any, instruction. They are, of
course, to be told that the probable life span of the decedent
is one of the variables which they must take into consideration
in arriving at the award to be made. Nevertheless, instruc-
tions as to what factors are to be considered in determining

a probable span of life are addressed to a subject well within their common knowledge and we do not think that the instruction here complained of could have produced injury by way of increasing the awards which would otherwise have been made. As a matter of fact, the evidence in this case concerning the probable length of life of decedents other than the tables was of such a nature that made it altogether likely that these two individuals had a better than average chance to live for the period of time indicated in the tables. They were young, in good health and physical condition, settled into harmonious family relationships and receiving income apparently sufficient for their needs. Had the instruction complained of not been given it is likely that the jury would in any event, these things considered, have believed that these people would probably have lived out the measure of time allotted by the tables as their probable expectancy of life.

Finally, appellants assert that the awards were in all three cases excessive. The rule to be applied by an appellate court in determining whether or not an award made by a jury is excessive has been stated many times. ▮ Unless the reviewing court can say that the award made by a jury is so grossly disproportionate to sums reasonably warranted by the facts as to shock the sense of justice and raise the presumption that it is the result of passion and prejudice the award must stand. (*Potter* v. *Empress Theatre Co.*, 91 Cal.App.2d 4, 13-14 [204 P.2d 120].) " 'The amount of damages in such cases is committed first to the sound discretion of the jury, and next to the discretion of the judge of the trial court, who, in ruling upon the motion for a new trial, may consider the evidence anew, determine anew the facts, and set aside the verdict if it is not just. Upon appeal, the decision of the trial court and jury on the subject cannot be set aside unless the verdict is "so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury." ' " (*Bisinger* v. *Sacramento Lodge No. 6*, 187 Cal. 578, 585 [203 P. 768].) In this case motions for new trial were made and as to each award the trial court ordered that a new trial would be granted unless certain sums were by the respondents remitted from each award. From this, of course, we conclude that the trial judge who heard the evidence, saw the witnesses and experienced the benefit of first-hand contact with the presentation made by each side believed that the reductions which he indicated ought in justice be made, would bring the awards within permissible

bounds. He believed the award in favor of Peggy Sumrall should be reduced by one-third; that the award in favor of Janis Slingsby for the loss she suffered from the death of her father ought to be reduced by approximately 16 per cent and that the award in favor of Peggy and Janis for the loss of their mother ought to be reduced by approximately 11 per cent. While, of course, no one can fix damages in such cases as these except by rough approximation, nevertheless the action of the court shows that the trial judge considered each award and his determination of the proper sums as expressed in his order lends support to the final judgments.

We think we cannot say from this record that the amounts finally adjudged to be recovered by respondents can meet the tests for reversal by an appellate court. These considerations are strengthened by reference to the testimony which showed, without conflict, these things: Peggy Sumrall was approximately 11 years old when she lost her mother; Janis Slingsby was approximately 6 years old when she lost both her mother and her father; decedent Melvin Slingsby was 29 years old, had been in military service in the last World War, achieved the rank of lieutenant in the infantry, was a law-abiding and temperate man, a regular church attendant, and steadily employed. He and his wife were caring for both children in their home. Peggy was taking music lessons and was given singing instruction, and, although not Slingsby's daughter, yet he had commenced proceedings to adopt her. He was highly respected in the community in which he lived. Neva Slingsby, mother of the two children, was a loving and affectionate mother, was rearing her children according to good, accepted standards and giving them her personal care and attention. The family apparently was a happy and congenial one. Children are fortunate to be born into and to be brought up in such a family. While Slingsby's earnings at the time of death were approximately $300 per month, they were apparently sufficient for the demands made upon them, and having in view his exemplary character as shown by the evidence there was reasonable probability that these earnings would not only continue at the rate already achieved, but would increase materially. We hold that the awards were within permissible limits.

The judgments are affirmed.

Adams, P. J., and Peek, J., concurred.