[Civ. No. 8093. Third Dist. June 13, 1952.]

ABRAHAM TODD et al., Respondents, v. ROY STAND-
FIELD et al., Appellants.

Vernon F. Gant for Appellants.

Linneman, Burgess and Telles & Van Atta for Respondents.

ADAMS, P. J.—Plaintiffs, Abraham Todd and Ida Mae
Todd, husband and wife, brought this action against Roy
Standfield and fictitious defendants, alleging that on Au-
gust 10, 1950, at 7:30 a. m., Standfield so carelessly and

negligently drove and operated a certain flatbed truck as to cause same to collide with a Ford sedan automobile driven by Mrs. Todd, causing injuries to her and to the Ford sedan. In a second count Abraham Todd alleged that he had been compelled to employ medical services for his wife, and had incurred other expenses for damage to the car driven by his wife, for all of which the plaintiffs sought damages.

Standfield appeared and in answer to plaintiffs' complaint denied negligence on his part, and alleged contributory negligence on the part of Mrs. Todd. One C. A. Makin appeared as one of the fictitious defendants and alleged that he was the owner of the truck driven by Standfield who was his employee. Makin also denied negligence on the part of Standfield and alleged contributory negligence on the part of Mrs. Todd.

Trial by a jury resulted in a verdict in favor of plaintiffs in the sum of $20,000. A motion for a new trial was made by said defendants, and denied by the court, which court also denied a motion by defendants for a judgment notwithstanding the verdict.

Defendants have appealed from both the judgment on the verdict and the order denying the latter motion, asserting as ground for reversal that the evidence shows that Mrs. Todd was guilty of contributory negligence, that the court erred in instructing the jury, and that the award of damages is excessive.

Perusal of the transcript of the testimony in the case reveals the facts to be as follows: Makin, the owner of the truck, instructed Standfield to deliver an electric pole to one Coleman, and 15 or 16 20' steel reinforcing rods to one Cecil Burdell. Standfield unloaded the electric pole at Coleman's, at which time he took from the end of same a red flag which he placed in his pocket. He then tied the reinforcing rods into the side of the truck in such a manner that they extended beyond the rear end of the truck a distance of 6 to 8 feet. About 7:30 a. m. Mrs. Todd was driving eastward along Blossom Street, as the highway running from South Dos Palos to the city of Dos Palos, in Merced County, was known. This highway was paved, completely straight for more than a mile to the west; the weather was clear. After making his delivery at Coleman's Standfield backed his truck out of the Coleman field on the north side of and onto Blossom Street, just as Mrs. Todd was approaching thereon, and the collision followed. Mrs. Todd was rendered unconscious and was unable to recall the circumstances, but Robert Lee, who

was driving a 1½ ton cattle truck following Mrs. Todd's car at a distance of 150 to 200 yards, testified that he was driving behind the Todd car at approximately 35 miles per hour, and gaining upon it; that when Mrs. Todd was but 40 or 50 feet from the road leading out of the Coleman field he saw defendants' truck back rapidly across the highway and come to a stop only after passing completely across it; that Mrs. Todd swerved her car to the right off the paved portion of the road (which was also shown by her tire marks on the pavement), apparently seeking to go behind defendants' truck, but failed in this and the steel rods protruding from defendants' truck crashed through the side of her car. Standfield testified that before backing out he had looked down the highway to the west but had seen nothing approaching. However, the jury and the court were fully justified in believing as a fact from the testimony aforesaid that Standfield could or should have seen the two approaching vehicles, and that there was no contributory negligence on Mrs. Todd's part. Certainly there was none as a matter of law. Section 553 of the Vehicle Code provides that: "The driver of a vehicle about to enter or cross a highway from any private road or driveway . . . shall yield the right of way to all vehicles approaching on said highway." Also see *Anthony v. Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826], and cases there cited.

Regarding the asserted error in the failure of the trial court to give certain instructions offered by appellants, the court read section 553 of the Vehicle Code. An instruction offered, which appellants contend should have been given, reads: "The driver of any vehicle about to enter or cross a highway from an alley not exceeding the width of 16 feet, or any private road or roadway, shall yield the right of way to all vehicles approaching on said highway. This simply means that a vehicle entering a public highway from a private driveway shall yield to a vehicle within the intersection or a vehicle approaching so closely on the public highway as to constitute an immediate hazard. It is only when such car on the public highway is approaching so near as to constitute an immediate hazard that one may not emerge from a private way onto the highway." ▮ It was refused because it was given in substance elsewhere. The instruction given elsewhere, which was also presented by appellants, reads: "If you find from the evidence in this case that the defendant Standfield drove his vehicle from a pri-

vate driveway onto a public highway at a time when the plaintiff's vehicle was sufficiently distant from the intersection as not to constitute an immediate hazard, then I instruct you that the defendant Standfield had the right of way and it was the duty of the plaintiff under such circumstances to yield the right of way to said defendant and to slow down and stop, if necessary, in order to avoid a collision.'' Said instruction covered appellants' contentions sufficiently, so that it cannot be said that their view as to the law was not imparted to the jury.

Appellants also criticize the court regarding other instructions offered by them, but we do not deem it necessary to prolong this opinion by comment upon each and every of them. The record shows that appellants offered 16 instructions on the question of negligence which were given, six offered and given on the question of damages, and three which were given as modified; and that 16 offered by them were refused.

It is often stated that it is error to give and proper to refuse instructions that overemphasize issues, theories or defenses, and that it is not necessary for a court to give instructions in the particular language requested; that if the subject matter is covered and the law applicable is fairly and fully stated, that is sufficient. See *Dodge* v. *San Diego Elec. Ry. Co.*, 92 Cal.App.2d 759 [208 P.2d 37], and cases there cited.

In the case before us, which is not a complicated one, the instructions given sufficiently covered the applicable law, and we are satisfied that appellants suffered no injustice as the result of any either given or refused.

■ As for appellants' third contention, that the damages awarded are excessive, the trial court, on motion for a new trial, refused to reduce them, and we are not disposed to do so. As was said by this court in *Sumrall* v. *Butler*, 102 Cal. App.2d 515, 524 [227 P.2d 881] : ''The rule to be applied by an appellate court in determining whether or not an award made by a jury is excessive has been stated many times. Unless the reviewing court can say that the award made by a jury is so grossly disproportionate to sums reasonably warranted by the facts as to shock the sense of justice and raise the presumption that it is the result of passion and prejudice the award must stand. (*Potter* v. *Empress Theatre Co.*, 91 Cal.App.2d 4, 13-14 [204 P.2d 120].) ' ''The amount of damages in such cases is committed first to the sound discretion of the jury, and next to the discretion of the judge of

the trial court, who, in ruling upon the motion for a new trial, may consider the evidence anew, determine anew the facts, and set aside the verdict if it is not just. Upon appeal, the decision of the trial court and jury on the subject cannot be set aside unless the verdict is 'so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury.' '' ' (*Bisinger* v. *Sacramento Lodge No. 6*, 187 Cal. 578, 585 [203 P. 768].) ''

The evidence in the case before us shows that Mrs. Todd was employed as a domestic, and that, as a result of her injuries, the probability was that she would not be able to perform the duties of such a servant thereafter. There was evidence that she sustained serious injuries to her head, her eyes, her shoulder and her back, and moderate injuries to her hand, her right knee and her left hip. The seriousness of the head injury is indicated by the fact that she was unconscious from the time of the accident at 7:30 a. m. on August 10th until Saturday, August 12th, and that she suffered a complete loss of memory of incidents occurring prior to the accident. As a result of her injury she was placed in a cast extending from a point below her hips to her armpits, and her arm was held in a horizontal position. She remained in this cast approximately eight weeks. She was in the hospital for a period of 19 days and remained in bed thereafter for three weeks, and it was not until the middle of December or the early part of January that she was able to do even a substantial part of her own housework. After the accident she was subject to extreme headaches which still persisted at the time of the trial, though with less frequency and severity, and she sustained injury to her eyes, and suffered from the injury to her shoulder at the time of the trial. Also at the time of the trial she remained under her doctor's care, and there was medical testimony that she might well have permanent pain in the lumbar portion of her back, and that the separation of the collarbone from the shoulder was permanent.

It was for the jury first, and for the trial court on the motion for a new trial, to pass upon the reasonableness of the award. We cannot say that it was so excessive as to shock the sense of justice or raise a presumption that it was the result of prejudice or passion.

The judgment and the order appealed from are affirmed.

Peek, J., and Van Dyke, J., concurred.