[Civ. No. 18902. Fourth Dist., Div. One. Aug. 20, 1980.]

DONALD SCOTT ALLEN et al., Plaintiffs and Respondents, v.
STEPHEN MICHAEL TOLEDO et al., Defendants and Appellants.

COUNSEL

Higgs, Fletcher & Mack, David D. Randolph and Gregg C. Sindici for Defendants and Appellants.

William T. Tyson, Popko & Cornblum and Bruce Cornblum for Plaintiffs and Respondents.

OPINION

**BROWN (Gerald), P. J.**—On November 13, 1975, 19-year-old Stephen Toledo smashed his father's pick-up truck into Charlene Allen's Volkswagen "Thing" which was pulling out of the driveway of a convenience store, killing Charlene. Her four minor children sued Stephen and his father Robert Toledo for her wrongful death. The cause of action against Robert was for negligently entrusting Stephen with his truck when he knew, or should have known, Stephen was a reckless driver.

The jury returned a general verdict of $200,000 against Stephen and Robert. The jury also answered special interrogatories on negligent en-

trustment and comparative fault. The jury found Robert permitted Stephen to use his vehicle when he knew or should have known Stephen was a reckless driver; Stephen's recklessness proximately caused this accident. As to comparative fault, the jury found Charlene was not negligent.

Stephen and Robert appeal the judgment. Contrary to plaintiffs' claim, the appeal is not frivolous.

*Admission of Evidence of Other Accidents*

Over objection, the court admitted evidence of Stephen's involvement in three earlier vehicle accidents. Robert knew Stephen had been in an accident on November 18, 1973, while driving Robert's vehicle. Stephen was in an accident on March 29, 1975, in which the vehicle, which Robert owned and Stephen was driving, was damaged. Stephen was injured on October 25, 1975, and the vehicle he was driving was damaged when it struck another vehicle and then hit a house. Stephen was living at home at the time. Less than three weeks later he killed Charlene.

Defendants contend the evidence of the earlier accidents should have been excluded under Evidence Code sections 1101, 1104, and 352, because its probative value was far outweighed by the likelihood the jury would improperly infer Stephen had been negligent or reckless in the present instance. Evidence of involvement in other accidents is inadmissible when its purpose is solely to prove negligence in the accident in question (*Downing v. Barrett Mobile Home Transport, Inc.* (1974) 38 Cal.App.3d 519, 524 [113 Cal.Rptr. 277]; see Evid. Code, § 1104). Here, however, the evidence of Stephen's involvement in other accidents was relevant to Robert's liability for negligent entrustment. Robert's knowledge of Stephen's unfitness or incompetence to drive is an essential element of liability for negligent entrustment (*Richards v. Stanley* (1954) 43 Cal.2d 60, 63, 65 [271 P.2d 23]; *Syah v. Johnson* (1966) 247 Cal.App.2d 534, 539 [55 Cal.Rptr. 741]; *McCalla v. Grosse* (1941) 42 Cal.App.2d 546, 550 [109 P.2d 358]).

"The doctrine of 'negligent entrustment' is clearly distinguishable from the theory of 'vicarious liability.' Negligent entrustment is a common law liability doctrine. [Citation.] Conversely, the obligation of a lending owner of an automobile is one of statutory liability. [Cita-

tion.] An owner of an automobile may be independently negligent in entrusting it to an incompetent driver. [Citation.] California is one of several states which recognizes the liability of an automobile owner who has entrusted a car to an incompetent, reckless, or inexperienced *driver*, and has supplemented the common law doctrine of negligent entrustment by enactment of a specific consent statute. (See 163 A.L.R. 1418; Veh. Code, §§ 17150-17157.)

". . . . . . . . . . . . . .

". . . [F]oreign jurisdictions have given favorable sanction to the common law doctrine of negligent entrustment. [Citations.]

"'It is generally recognized that one who places or entrusts his motor vehicle in the hands of one whom he knows, or from the circumstances is charged with knowing, is incompetent or unfit to drive, may be held liable for an injury inflicted by the use made thereof by that driver, provided the plaintiff can establish that the injury complained of was proximately caused by the driver's disqualification, incompetency, inexperience or recklessness. . . .

"'Liability for the negligence of the incompetent driver to whom an automobile is entrusted does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle, with permission to operate the same, to one whose incompetency, inexperience, or recklessness is known or should have been known by the owner.' [Citations.]

"Under the theory of 'negligent entrustment,' *liability is imposed on vehicle owner or permitter because of his own independent negligence and not the negligence of the driver, in the event plaintiff can prove that the injury or death resulting therefrom was proximately caused by the driver's incompetency.*" (Italics, last paragraph, added: *Syah v. Johnson, supra*, 247 Cal.App.2d 534, 538-539; see also, 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 650, p. 2929; Rest.2d Torts, §§ 308, 390; *Pritchett v. Kimberling Cove, Inc.* (8th Cir. 1977) 568 F.2d 570.)

"In reviewing the exercise by the trial court of its discretion, under Evidence Code section 352, an appellate court is neither authorized nor warranted to substitute its judgment for that of the trial judge. Relief is

available only where the alleged abuse of discretion clearly constitutes a miscarriage of justice." (*Cain* v. *State Farm Mut. Auto Ins. Co.* (1975) 47 Cal.App.3d 783, 798 [121 Cal.Rptr. 200]; *Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].) Here the trial court balanced the probative value of the evidence of Stephen's other accidents against the potential for prejudice resulting from its improper use by the jury (Evid. Code, § 352). The evidence included no inflammatory or highly prejudicial details; indeed, it did little more than show the occurrence of the accidents. After weighing these factors, the trial court admitted the evidence for the limited purpose of showing Robert's knowledge and instructed the jury accordingly. In addition, the court told the jury it was not to consider the evidence in determining whether Stephen was negligent in the accident involved in the litigation. Under these circumstances, the trial court did not abuse its discretion in admitting evidence of Stephen's other accidents.

Defendants argue the evidence of other accidents does not support the jury's finding Robert liable for negligently entrusting the pick-up to Stephen. Liability for negligent entrustment is determined by applying general principles of negligence, and ordinarily it is for the jury to determine whether the owner has exercised the required degree of care (*Hartford Accident & Indemnity Co.* v. *Abdullah* (1979) 94 Cal.App.3d 81, 91-92 [156 Cal.Rptr. 254]; *Owens* v. *Carmichael's U-Drive Autos, Inc.* (1931) 116 Cal.App. 348, 350 [2 P.2d 580]).

 Review of the evidence on this issue is limited to determining whether the jury's finding is supported by substantial evidence. "…[A]ll conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible…[W]hen a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]).

"The trier of fact is the sole judge of the credibility and weight of the evidence …" (*Estate of Teel* (1944) 25 Cal.2d 520, 526 [154 P.2d 384].)

■ The record contains uncontroverted evidence of Stephen having been in three earlier vehicle accidents, including two within the eight months before the collision involved here, and one of them nineteen days before. Moreover, in the most recent accident, the vehicle Stephen was driving collided with both another vehicle and a house. Robert was aware of Stephen's involvement. There was substantial evidence from which the jury could conclude a reasonable and prudent vehicle owner with knowledge of Stephen's previous accidents would not have permitted Stephen to drive. The jury's finding Robert liable for negligently entrusting the pick-up to Stephen is supported by substantial evidence.

### The Jury's Finding Charlene Was Not Negligent

Stephen and Robert say the jury erred in finding Charlene was not negligent. They assert her negligence was in not looking to the south, in the direction from which vehicles would approach in the first lanes of traffic which she had to cross, when she pulled out from the driveway of the store.

The record contains conflicting testimony about how long Charlene looked to the south, when she turned her head to look to the north, and whether the pick-up driven by Stephen had become visible from her vantage point before she pulled out. But there was evidence from which the jury could conclude she continued to look to the south until she pulled out, and the pick-up had not come into her view before she pulled out. Accordingly, the jury's finding Charlene was not negligent is supported by substantial evidence.

Defendants contend an error during the jury's deliberations prejudicially affected the finding on Charlene's negligence. The jury requested a rereading of the testimony of independent witness Luke Perry about the direction Charlene was looking when she pulled out from the driveway. In response to the request, the court had the testimony transcribed, and the transcripts were identified as court exhibits 1, 2 and 3. On objection by plaintiffs' counsel, the court decided the testimony in exhibit 2 was not within the scope of the jury's request, and only exhibits 1 and 3 were given to the jury. ■ When the jury requests a repetition of certain testimony, the trial court is not required to furnish the jury with testimony not requested (*Ray* v. *Jackson* (1963) 219 Cal.

App.2d 445, 454 [33 Cal.Rptr. 339]; *McGuire* v. *W.A. Thompson Distrib. Co.* (1963) 215 Cal.App.2d 356, 365-366 [30 Cal.Rptr. 113]). The testimony in exhibit 2 includes no mention of the direction Charlene was looking; rather, it deals with whether the witness could see the pick-up driven by Stephen at the time Charlene pulled out. This testimony might, as defendants contend, have been helpful to the jury in putting the testimony in exhibits 1 and 3 into context, but it was not what the jury requested. Therefore the court did not err in not sending exhibit 2 to the jury room.

### Damages

Defendants unmeritoriously contend the award of damages for Charlene's death was improper because the record contains no evidence of any financial contributions by her to the children. ■ Damages for wrongful death are not limited to compensation for losses with "ascertainable economic value." (*Krouse* v. *Graham* (1977) 19 Cal.3d 59, 68 [137 Cal.Rptr. 863, 562 P.2d 1022].) Rather, the measure of damages is the value of the benefits the heirs could reasonably expect to receive from the deceased if she had lived (*Mize* v. *Atchison T. & S.F. Ry. Co.* (1975) 46 Cal.App.3d 436, 453 [120 Cal.Rptr. 787]; *Syah* v. *Johnson, supra,* 247 Cal.App.2d 534, 547). These benefits include the personal services, advice, and training the heirs would have received from the deceased, and the value of her society and companionship (*Krouse* v. *Graham, supra,* 19 Cal.3d 59, 68; *Mize* v. *Atchison T. & S.F. Ry. Co., supra,* 46 Cal.App.3d 436, 453; *Syah* v. *Johnson, supra,* at p. 547; *Griott* v. *Gamblin* (1961) 194 Cal.App.2d 577, 579 [15 Cal.Rptr. 228]). "The services of children, elderly parents, or nonworking spouses often do not result in measurable net income to the family unit, yet unquestionably the death of such a person represents a substantial 'injury' to the family for which just compensation should be paid." (*Krouse* v. *Graham, supra,* 19 Cal.3d 59, 68.) Here it was not essential for plaintiffs to show Charlene was making financial contributions to the children.

Defendants also suggest the award was the product of prejudice or passion. ■ "[T]he assessment of damages is a matter committed to the discretion and sound judgment of the trier of facts, whose conclusion will not be disturbed by an appellate court unless the sum awarded is so disproportionate to the injury proved as to justify the view that it was given under the influence of passion or prejudice." (*Bechtold* v.

*Bishop & Co., Inc.* (1940) 16 Cal.2d 285, 293 [105 P.2d 984]; *Mize* v. *Atchison T. & S.F. Ry. Co., supra,* 46 Cal.App.3d 436, 453; *Syah* v. *Johnson, supra,* 247 Cal.App.2d 534, 547; *Griott* v. *Gamblin, supra,* 194 Cal.App.2d 577, 580-581.) ■ There is ample evidence of compensable loss to support the jury's award of damages here. Irrefragable evidence established Charlene's performance of normal parental and household duties, including housekeeping, discipline and training of the children, and assisting them with their schoolwork, participation in the children's activities such as Boy Scouts, and the existence of a close family relationship. Under this evidence, the award of $200,000, or $50,000 to each of the four children, is not excessive and is not the product of passion or prejudice.

Defendants claim the trial court erred in three respects when it instructed from BAJI No. 14.50 on the measure of damages. They assert reference to Charlene's financial contributions was improper because there was no competent evidence of such contributions. The jury was told it may consider the "financial support, *if any,* which each of the heirs would have received from the deceased." (Italics added.) The "if any" prevents any impropriety.

Defendants say a reference in the instruction to a life expectancy figure for Charlene from a mortality table was error without evidence of Charlene's life expectancy. ■ The life expectancy of the deceased is a question of fact for the jury to decide (*Francis* v. *Sauve* (1963) 222 Cal.App.2d 102, 121 [34 Cal.Rptr. 754]; *Sumrall* v. *Butler* (1951) 102 Cal.App.2d 515, 523 [227 P.2d 881]), considering all relevant factors including the deceased's health, lifestyle and occupation. Life expectancy figures from mortality tables are admissible but are not conclusive (*Francis* v. *Sauve, supra,* 222 Cal.App.2d 102, 121; *Sumrall* v. *Butler, supra,* 102 Cal.App.2d 515, 522, 523). Here the jury was correctly told the figure given was not conclusive evidence of Charlene's life expectancy. It was merely "a factor which you may consider," along with the evidence of Charlene's health, habits, occupation and activities. Charlene had been in excellent health before her death; she did not smoke or drink, and she was physically active.

Contrary to defendants' claim, the instruction carefully distinguished between what could be considered in making an award, such as loss of love, companionship, comfort, affection, society, solace and moral sup-

port, and what could not be considered, such as any pain or suffering of Charlene, or the children's grief and sorrow.

The judgment is affirmed.

Wiener, J., and Lord, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 15, 1980.

---

*Assigned by the Chairperson of the Judicial Council.