DAVID F. WISDOM and BARBARA M. WISDOM, Plaintiffs-Appellants, *v.* JAMES H. PFLUEGER, ARCHIE K. KOMAE, KOMAE, INC., and WISDOM INDUSTRIES, INC., Defendants-Appellees

APPEALS NOS. 8668 and 8709

(CIVIL NO. 57811)

AUGUST 8, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

In this combined breach of contract/tort action, plaintiffs David F. Wisdom ("Mr. Wisdom") and Barbara M. Wisdom ("Mrs. Wisdom") appeal the lower court's judgment and award of attorneys' fees in favor of defendants James H. Pflueger ("Pflueger"), Archie K. Komae ("Komae"), Komae, Inc., and Wisdom Industries, Inc. ("Company"). We affirm the judgment, set aside the award of attorneys' fees, and remand for redetermination of attorneys' fees.

This appeal raises two issues: (1) whether certain of the lower court's conclusions of law are erroneous and (2) whether the lower court had jurisdiction to enter an award of attorneys'

fees after the Wisdoms timely filed a notice of appeal. We answer no to both issues.

In May of 1976, the Wisdoms entered into negotiations for the sale of Company to Komae and Pflueger. At that time, Mr. Wisdom was Company's Chairman of the Board, one of its three directors, and the controlling shareholder with 16,700 shares of stock. The other directors were Mrs. Wisdom and Komae with 4,100 shares of stock each.

Most of the negotiations on Komae's and Pflueger's behalf were conducted by Robert Cisco and George Lipp of the accounting firm of Harris, Kerr, Forster & Company. After months of negotiations, the parties finally arrived at an agreement. The basic term of the sale were as follows:

1. For $956,070, the Wisdoms sold 17,705 shares of Company's stock to Komae, Inc., a Hawaii corporation organized by Komae and Pflueger to purchase a controlling interest in company;

2. For $167,130, the Wisdoms sold 3,095 shares of Company's stock to the Company's existing Employee Stock Ownership Plan; and

3. Mr. Wisdom agreed for a fifteen-year term, from August 1, 1976 or until his prior death or disability, to provide consultation services and not to compete, and Company agreed to pay him or his surviving wife or his or her estate $2,333 per month for the full fifteen-year term.

Thereafter, the parties signed a Stock Purchase Agreement dated August 20, 1976 and an Employment Agreement dated August 1, 1976. The Stock Purchase Agreement contained the following clause:

This Agreement contains the entire Agreement among the parties relating to the sale of the Stock by the Sellers and the purchase of the stock by the Buyer, and all prior negotiations are merged herein. This Agreement shall not be modified or amended, in whole or in part, except by a written agreement hereafter signed with like formality by the parties hereto.

Neither the Stock Purchase Agreement nor the Employment Agreement contained any provision entitling Mr. Wisdom to pension benefits or other fringe benefits.

On July 31, 1976, the day before the Employment Agree-

ment took effect, the Wisdoms and Komae caused the pension plan to be amended to allow a person to receive retirement benefits while still an "employee" of Company. The plan, however, was revocable[1] and subject to a determination by the District Director of the Internal Revenue Service (IRS) that it met the requirements of federal laws.[2] A favorable determination by the IRS had not been received when Company revoked the plan in November 1976.

On September 15, 1976, a special meeting of Company's new shareholders was held and the number of directors was increased from three to five. Only Mr. Wisdom, Komae, and Pflueger, however, were elected directors until the next annual meeting. On the same day, a special meeting of the Board of Directors was also held. The minutes of that meeting state, "David Wisdom shall be covered under normal employee benefits as an employee including major medical and pension plan coverage."

In calendar years 1977 and 1978, after Mr. Wisdom's 62nd birthday, Company withheld a total of $2,036.10 for Federal Insurance Contributions Act (social security) taxes from its monthly payments to Mr. Wisdom and paid it over to the federal government.

At the bench trial held in June 1981, the Wisdoms contended that defendants wrongfully dishonored an enforceable promise to pay $2,641.06 in monthly pension benefits to Mr. Wisdom after his 65th birthday and that Company improperly

---

[1] Clause 9.01, Article IX (Amendment, Termination, Segregation and Mergers of Plan) of "The Wisdom Industries, Inc. Retirement Plan" ("Plan") provides in relevant part:

The employer expressly reserves the right, by action of the Board of Directors, to amend the Plan as to its Participants with the consent of the Board of Directors, or to terminate the Plan or to completely discontinue contributions as to its Participants at any time and without the consent of any other party.

[2] Clause 3.03, Article III (Cost of Plan) of the Plan provides in relevant part:
The effectiveness of this amended Plan shall be contingent upon an initial determination of the District Director of Internal Revenue that the amended Plan is qualified to meet requirements under the applicable provisions of the Internal Revenue Code of 1954 as amended and the Employee Retirement Income Security Act of 1974. . . . In the event such a determination cannot be obtained, the amended Plan shall be null and void[.]"

withheld the $2,036.10 in social security taxes from his compensation in 1977 and 1978, thereby negligently causing him to lose social security benefits during the period between his 62nd and 65th birthdays. They prayed for enforcement of the promise to pay pension benefits, for repayment of the social security taxes, and for an award of an amount equal to the social security benefits Mr. Wisdom would have received between the ages of 62 and 65.

Judgment for defendants was filed on February 16, 1982. On March 11, 1982, defendants moved for an award of attorneys' fees. On March 16, 1982, the Wisdoms filed a notice of appeal of the judgment. On April 1, 1982, the lower court awarded defendants attorneys' fees of $12,626.70.

On appeal, the Wisdoms assert six points of error:

1. Conclusion of law 1 that Lipp had no apparent authority to bind Komae, Pflueger, or Company to a contract is erroneous.

2. Conclusions of law 2, 4, and 12 that Komae did not obligate defendants to pay pension and fringe benefits to Mr. Wisdom are erroneous.

3. Conclusions of law 10 and 11 that Company's board did not on September 15, 1976 ratify the defendants' agreement to pay pension and fringe benefits to Mr. Wisdom are erroneous.

4. Conclusions of law 13, 15, and 16 that Company did not wrongfully withhold social security taxes from its monthly payments to Mr. Wisdom in 1977 and 1978 and did not negligently cause him a reduction in social security benefits are erroneous.

5. The lower court was without jurisdiction to award attorneys' fees to defendants after the Wisdoms filed their timely notice of appeal.

6. The amount of attorneys' fees awarded by the lower court violated Hawaii Revised Statutes (HRS) § 607-14 (1976).

POINTS OF ERROR 1, 2, AND 3:

We find no merit in points of error 1, 2, and 3 for two reasons. First, in their questions presented and points of error set forth in their brief, the Wisdoms do not contest any of the findings of fact which support these allegedly erroneous conclusions of law. For example, finding of fact 6 states as follows: "Cisco and Lipp were informed that they did not have author-

ity to bind Komae and/or Pflueger to terms of an agreement and this limitation of their authority was expressly communicated to the Plaintiffs."

In choosing to attack only the conclusions and not the findings upon which the conclusions are based, the Wisdoms made a fatal error. Inasmuch as the findings of fact are the underpinnings of the conclusions of law, a successful attack on a finding may invalidate one or more conclusions. However, an attack on a conclusion which is supported by a finding is not an attack on that finding. If a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid.

Second, the record contains substantial evidence in support of the findings which in turn support the challenged conclusions of law. Moreover, we do not have a definite and firm conviction that a mistake has been made. Consequently, even if the findings had been properly challenged under Rule 3(b)(5) of the Hawaii Supreme Court Rules, they are not clearly erroneous and may not be set aside on appeal. Rule 52(a), Hawaii Rules of Civil Procedure; *Stewart v. Smith,* 4 Haw. App. 185, 662 P.2d 1121 (1983). Since the challenged conclusions follow from the findings and are proper statements of law, they are valid.

POINT OF ERROR 4:

Under section 3101(a) of the Internal Revenue Code (1980) (I.R.C.), the employer must deduct a percentage of an employee's wages for social security taxes. As provided in section 3121(a)(9), I.R.C., wages do not include "any payment (other than vacation or sick pay) made to an employee after the month in which he attains the age of 62, if such employee did not work for the employer in the period for which such payment is made." Mr. Wisdom reached 62 years of age in February 1976. After Company made the deduction from the payments due Mr. Wisdom in 1977 and 1978, he claimed that he was not subject to social security taxes after he reached 62 years of age and discontinued the performance of regular work. Company put the question to the federal government. The government refunded the amount withheld in 1977 and Company paid it over to Mr. Wisdom. Company also applied for a refund of the amount withheld in 1978 but had not

received it by the time judgment was entered. Therefore, the lower court ordered Company to turn it over to Mr. Wisdom upon receipt. The Wisdoms, however, are not satisfied with that result. Since the federal government has apparently determined that Company erred in withholding the taxes, the Wisdoms want judgment against Company for the amount withheld even though the federal government, not Company, has the money.

Section 3102(a), I.R.C., requires employers to deduct social security taxes from their employees' wages. Thus, the employer is a collection agent for the federal government. Moreover, section 3102(b), I.R.C., provides:

> Indemnification of employer. Every employer required so to deduct the tax shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer.

Under section 3102(b), I.R.C., if an employer made a proper deduction, it is entitled to indemnification. If it should have deducted, and did not, it is liable to the federal government for the amount of the taxes due. In this case, the question is whether an employer who should not have deducted the tax is liable to the employee for the amount deducted.

This issue appears to be one of first impression. Unfortunately, it was not so clearly defined as it could have been in the proceedings below. It is not clear from the record whether the improper withholding claim was in contract or tort or both. As an agent, the employer is subject to tort liability, 3 Am. Jur. 2d *Agency* § 300 (1962), but might not be subject to contract liability. 3 Am. Jur. 2d *Agency* § 294 (1962). In this case, however, our ruling on the issue of liability is the same whether the allegation was in contract or tort or both. The contract/tort question is relevant only when deciding defendant's entitlement to attorneys' fees.

The lower court found and concluded that Company's error was not negligent or wilful. In other words, Company acted reasonably and in good faith. In view of that finding and conclusion, we find no basis for imposition of liability on Company in contract or tort. We hold that an employer who reasonably and in good faith attempts to comply with its duty

to collect social security taxes for the federal government is not personally liable to its employee for the amount deducted or for consequential damages if the deduction is later determined to be improper.

POINTS OF ERROR 5 AND 6:

The Wisdoms correctly contend that upon the filing of their notice of appeal of the judgment, the lower court lost its jurisdiction to award attorneys' fees until the disposition of the appeal. *D'Elia v. Association of Apartment Owners of Fairway Manor,* 2 Haw. App. 350, 632 P.2d 298 (1981). Therefore, the award of attorneys' fees must be set aside.

Although we are not called upon to decide whether the amount awarded was correct, in an effort to assist the trial court on remand, we will discuss that issue.

Section 607-14, HRS (1976) allows a defendant in an action in the nature of assumpsit to recover his attorney's fees based upon a percentage of "the amount sued for if the defendant obtains judgment." In this case, the Wisdoms sued for payment of $2,036.10 plus interest for social security taxes withheld and for pension benefits in the amount of $2,641.06 per month from February 1, 1979 until Mr. Wisdom's death. Defendants calculated the "amount sued for" to be $480,067.96 by adding (1) $2,036.10 for social security taxes, (2) $97,719.22 for monthly pension benefits of $2,641.06 from February 1979 to February 1982, the date of judgment, and (3) $380,312.64 for future pension benefits, assuming a remaining life expectancy of twelve years for a man of Mr. Wisdom's age as calculated by the Lawyers and Judges Publishing Company's life expectancy table. Under HRS § 607-14, defendants claimed and the court awarded them attorneys' fees in the amount of $12,626.70.

The Wisdoms argue, however, that the award is excessive because it erroneously assumes that Mr. Wisdom has a normal life expectancy of twelve years from February 1, 1979 and is based on more than the present value of the future benefits.

Mr. Wisdom's life expectancy is a question of fact, *Allen v. Toledo,* 109 Cal. App. 3d 415, 424, 167 Cal. Rptr. 270, 276 (1980); *Francis v. Sauve,* 222 Cal. App. 2d 102, 121, 34 Cal. Rptr. 754, 765 (1963). In deciding this issue, the trial court may properly look at life expectancy tables since they are relevant and admissible evidence. *Id.;* Annot., 116 A.L.R. 416 (1938);

*Levar v. Elkins,* 604 P.2d 602, 604 (Alaska 1980); *Oberhelman v. Blount,* 196 Neb. 42, 241 N.W.2d 355 (1976); *Sumrall v. Butler,* 102 Cal. App. 2d 515, 523, 227 P.2d 881, 887 (1951). Life expectancy tables are not conclusive but may be considered in connection with other evidence bearing on the person's probable life expectancy, such as health, habits, lifestyle, occupation, and activities. *Oberhelman, supra; Allen, supra; Francis, supra; Sumrall, supra.*

Concerning the question of present value of future benefits, the lower court may find helpful *Oberhelman, supra; Meier v. Bray,* 256 Or. 613, 475 P.2d 587 (1970); *Varney v. Taylor,* 79 N.M. 652, 448 P.2d 164 (1968); and Simmons, "Some Common Fallacies in Economist Testimony," 25 *For the Defense,* at 12 (May 1983).

The lower court's judgment is affirmed. Its award of attorneys' fees to defendants is set aside, and this case is remanded for a redetermination of attorneys' fees to defendants.

*Anthony B. Craven* (*David Shibata* and *Cheryl Nakamura* with him on the briefs; *Hamilton, Gibson, Nickelsen, Rush & Moore* of counsel) for appellants.

*Jeffrey S. Portnoy* (*William J. J. Wynhoff* with him on the briefs; *Cades, Schutte, Fleming & Wright* of counsel) for appellees.