LAW LIBRARY

**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

NO. 30015

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF TW

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 08-11970)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Fujise and Leonard, JJ.)

Mother-Appellant (Mother) and Father-Appellant (Father) appeal from the August 10, 2009 Order Awarding Permanent Custody entered by the Family Court of the First Circuit[1] (family court) awarding Petitioner-Appellee Department of Human Services, State of Hawai'i (DHS), permanent custody over Mother and Father's child TW and terminating Mother and Father's parental rights to TW.

On appeal, Mother argues that DHS failed to provide her with a reasonable opportunity to reunite with TW because (1) DHS failed to provide her with dual diagnosis substance abuse treatment in a timely manner and (2) DHS did not give her a reasonable period of time to prove that she could provide a safe family home for TW with the assistance of a service plan. Mother does not challenge any of the family court's findings of fact.

On appeal, Father argues that the family court abused its discretion when it held that he could not provide a safe family home within the forseeable future by relying too heavily upon Father's incarceration. Father challenges the family court's findings of fact numbers 92, 94, 95, and 107:

> 92. Under the circumstances presented by the case, Father was given every reasonable opportunity to effect positive changes to provide a safe family home and to reunify with [TW]. Father's ability to access appropriate services during his incarceration was limited due to her [sic] incarceration and not by any actions of DHS.

---

[1] The Honorable Karen Radius presided.

. . . .

94.   It is not reasonably forseeable that Father will become willing and able to provide [TW] with a safe family home, even with the assistance of a service plan because even if Father were to suddenly change his long standing pattern of behavior, there is no likelihood that he would sufficiently resolve his problems at any identifiable point in the future.

95.   The above [Hawaii Revised Statutes (HRS)] § 587-73(a)(1) and (2) "parental unfitness" findings of fact regarding Father were not solely based on his incarceration. The other factors that the court considered were Father's problems, as stated above, and the length of time he needs to demonstrate the ability to provide a safe home for [TW] after he is released from incarceration.

. . . .

107.   [Father] is not a credible witness, specifically his testimony about his ability to provide a safe family home for [TW], at the time of trial and the reasonably foreseeable future.

Father also challenges the family court's conclusions of law numbers 10, 12, and 14:

10.   An incarcerated parent cannot provide his/her child with a safe family home during his/her period of incarceration, and the incarcerated parent's participation in services is an empty pursuit until the parent is released from incarceration. In re Doe, [100 Hawai'i 335, 345, 60 P.3d 285, 295 (2002)].

. . . .

12.   DHS is under no obligation to provide services to an incarcerated parent, when the services are not available to the incarcerated parent in the prison system. In re Doe, 100 [Hawai'i] at 345, 60 P.3d at 295.

. . . .

14.   It is not reasonably forseeable that [TW's] legal mother, legal father, adjudicated, presumed, or concerned natural father, as defined under chapter 578, will become willing and able to provide [TW] with a safe family home, even with the assistance of a service plan, within a reasonable period of time.

After a careful review of the record in this case, the arguments of Mother and Father and the applicable law, we disagree with Mother and Father and resolve their points on appeal as follows.

According to the Hawai'i Supreme Court, "the family court is given much leeway in its examination of the reports

2

concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal." In re Doe, 101 Hawai'i 220, 227, 65 P.3d 167, 174 (2003) (internal quotation marks, citation, and brackets omitted). Moreover, in appeals concerning family court decisions to terminate parental rights,

> the question on appeal is whether the record contains substantial evidence supporting the family court's determinations [pursuant to HRS § 587-73(a)], and appellate review is thereby limited to assessing whether those determinations are supported by credible evidence of sufficient quality and probative value. In this regard, the testimony of a single witness, if found by the trier of fact to have been credible, will suffice.

In re Doe, 95 Hawai'i 183, 196, 20 P.3d 616, 629 (2001) (internal quotation marks and citation omitted).

> The family court's [Findings of Fact] are reviewed on appeal under the "clearly erroneous" standard. A [Finding of Fact] is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

In re Jane Doe, 101 Hawai'i at 227, 65 P.3d at 174 (internal quotation marks, citations, and ellipsis omitted).

"If a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid." Wisdom v. Pflueger, 4 Haw. App. 455, 459, 667 P.2d 844, 848 (1983).

According to the uncontested findings of fact in this case, Mother and Father are the parents of TW, a male child. On September 7, 2008, DHS took temporary foster custody of TW after Mother was found intoxicated and unconscious and TW was found in urine-soaked diapers. Mother was taken to The Queen's Medical Center emergency room and was later admitted to the Kekela Unit; Mother admitted using methamphetamines and drinking vodka and beer. DHS filed a petition for temporary foster custody of TW on September 10, 2008. Although served, Mother failed to answer

3

this petition; Father stipulated to the petition and service plan.

Mother suffers from long-standing unresolved substance abuse and mental health problems. Mother admitted at trial to an unsuccessful fourteen-year long history of participating in drug treatment where her longest period of sobriety was nine months. Mother suffers from Schizoaffective Disorder, Bipolar Type, and with Features of Post-Traumatic Stress Disorder. Although Mother has been prescribed psychotropic medication for her mental disorder, she has not demonstrated an ability to take her medication on a consistent and prolonged basis nor does she consistently participate in mental health treatment. At the time of trial, Mother had been taken off her medications due to another pregnancy.

Mother is the natural mother of three other children. In 2000, DHS "confirmed the report of abandonment of" the older two children, TW1 and LD. Mother lost her parental rights to the youngest of these three children, MW, by order of the family court dated October 23, 2008. Mother lost her parental rights to MW at least in part due to her substance abuse and mental health problems.

During her pregnancy with TW, Mother began participation in the Perinatal Addiction Treatment of Hawaii (PATH) program, which provided instruction on drug-free parenting and relationship skills. PATH arranged for mental health services, conducted drug testing, and monitored prenatal medical appointments. Although PATH is not a substitute for formal drug treatment, Mother refused formal drug treatment and discontinued attendance with PATH after TW was removed from her home. The family court ordered Mother to participate in a dual-diagnosis treatment program on March 9, 2009. However, Mother did not do so until ordered, as a condition of her release on bail by federal authorities on June 24, 2009, to participate in the dual-diagnosis treatment program at Hina Mauka. At the time of trial

in July 2009, Mother had not yet completed the residential phase of the treatment program at Hina Mauka.

Based on the foregoing unchallenged facts, there was substantial evidence in support of the family court's determination that Mother was not willing and able to provide TW with a safe family home, even with the assistance of a service plan.

Father has had only minimal contact with TW from TW's birth until Father's latest incarceration in July 2008. In April 2008, Mother reported to DHS that Father was hitting her and swearing at her. Mother entered a domestic violence shelter but returned after police removed Father from the family home. After a time away from the home, Father returned, only to be arrested for parole violations.

Father was convicted of Unauthorized Entry Into Motor Vehicle in the First Degree (UEMV) in June 2003, Promoting a Dangerous Drug in the Third Degree (PPD3) and Prohibited Acts Related to Drug Paraphernalia in April 2004, and again for UEMV and PPD3 in December 2005. As a result of these three convictions, Father was sentenced to concurrent indeterminate five-year terms of incarceration. Father's parole was revoked in July 2008 because he had used illicit drugs. On July 22, 2009, the Hawaii Paroling Authority decided that Father will be incarcerated until June 2010.

After release, Father will need to demonstrate a prolonged and sustained period of sobriety while he is living in the community, develop a bond with TW, and demonstrate appropriate parenting skills. Due to TW's age and the limited contact with TW, the family court found that Father would need at least an additional year to show this bond and parenting skills. The family court also found that Father was not "presently willing and able to provide [TW] with a safe family home, even with the assistance of a service plan.

The family court was well aware that a parent's incarceration could not be the sole basis for terminating that

parent's rights, but this fact can be taken into consideration with other factors relevant to whether the parent is able to "remedy the conditions of abuse and neglect." However, the family court was also aware that the length of the incarceration may be considered in determining whether a parent could provide a safe family home within a reasonable amount of time and that "a reasonable period of time" is defined as "two years from the date upon which the child was first placed in foster custody by the court" and that two years is the outer limit. See HRS § 587-73(a)(2) (2006).

Based on the uncontested facts in this case and the applicable law as stated by the family court, Father has failed to show that the family court was wrong in its determination that Father would not be able to provide a safe family home for TW within a reasonable time.

Therefore,

IT IS HEREBY ORDERED that the August 10, 2009 Order Awarding Permanent Custody entered by the Family Court of the First Circuit is affirmed as to both Mother and Father.

DATED: Honolulu, Hawai'i, April 16, 2010.

On the briefs:

Herbert Y. Hamada,
for Mother-Appellant.

Wilfred S. Tangonan,
for Father-Appellant.

Patrick A. Pascual and
Mary Anne Magnier,
Deputy Attorneys General,
for Petitioner-Appellee.

Chief Judge

Associate Judge

Associate Judge