Anna Marie RICHTER, Individually and As Administratrix of the Estate of Terry L. Richter, Sr., deceased, Appellant–Plaintiffs,

v.

ASBESTOS INSULATING & ROOFING, et al., Appellees–Defendants.

No. 02A05–0210–CV–481.

Court of Appeals of Indiana.

June 24, 2003.

Neal Lewis Lewis & Associates, Orland, IN, Attorney for Appellant.

Knight S. Anderson, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, IN, Attorneys for Appellee, United States Steel Corporation.

David A. Temple, Drewry Simmons Pitts & Vornehm, Indianapolis, IN, Thomas W. Hayes, Law Office of William M. Koziol, Long Grove, IL, Attorney for Appellee, John Crane, Inc.

Susan E. Mehringer, Lisa M. Dillman, Lewis & Wagner, Indianapolis, IN, Attorneys for Appellee, J.A. Sexauer Manufacturing Co.

Edward F. Harney, Jr., Janet Halline Nelson, Hume Smith Geddes Green & Simmons, Indianapolis, IN, Attorneys for Appellee, Pecora Corporation.

## OPINION

BAKER, Judge.

Appellant-plaintiff Anna Marie Richter, individually, and as administratrix of the estate of her deceased husband Terry L. Richter, Sr. (Terry), appeals the trial court's order of dismissal in favor of appellees-defendants United States Steel Corporation (U.S.Steel), John Carne, Inc. (John Carne), J.S. Sexauer Manufacturing Co. (J.S. Sexauer) and Pecora Corporation (Pecora), (collectively, the companies), claiming that the trial court erred in preventing her wrongful death action against the companies from proceeding. Specifically, Richter contends that the trial court erroneously determined that the action against the companies was barred by res judicata and collateral estoppel. Concluding that the circumstances here satisfied the requirements of the res judicata doctrine, we hold that judgment was properly entered for the companies and we affirm the trial court.

## FACTS

On November 26, 1997, Terry filed his original complaint in the Allen Circuit Court for damages against multiple defendants, including the companies, alleging that they were liable to him because he had been exposed to asbestos that had been manufactured or distributed by them. Terry claimed that he was exposed to asbestos at all of the sites where he worked from 1954 through 1989. The complaint contended that Terry contracted lung cancer because of the asbestos exposure, and alleged that all of the defendants should be held liable.

Although settlements were reached with respect to some of the defendants, other cases could not be settled, including those with the companies. However, on October 28, 1999, Richter consented in open court to the trial court's ruling that "the Court would then show that dismissal is with prejudice as to claims presently existing and with subject matter of suit." Appellant's App. p. 51.

Terry later died, whereupon Richter and Terry's estate proceeded to file a new cause of action in the Allen Superior Court against the companies on January 22, 2002, under our Wrongful Death Statute, Indiana Code section 34–23–1–1, and our Products Liability Act, Indiana Code section 34–20–2–1. In that complaint, Richter sought damages for loss of consortium as well as punitive damages against numerous defendants, including the four companies that had been dismissed with prejudice in the previous action. In response to the complaint, the companies moved for a dismissal under Trial Rule 12(B)(6), where they alleged that Richter's complaint failed to state a claim upon which relief could be granted. Specifically, the companies maintained that Richter's subsequent action for wrongful death should be barred because that suit was premised upon a consent

dismissal in the prior action for personal injury that had been initiated during Terry's lifetime. The companies asserted that Richter could not pursue an action under the Wrongful Death Act or Products Liability Act in her capacity as administratrix of the estate because Terry had brought his personal injury claim to judgment during his lifetime. On July 25, 2002, the trial court determined that the consent dismissal in the prior personal injury action justified the dismissal in the instant case and entered final judgment for the companies. It determined that collateral estoppel and res judicata barred Richter's claims against them and Richter now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Generally, the review of a dismissal pursuant to T.R. 12(B)(6) is de novo, requiring no deference to the trial court's decision. *Wilhoite v. Melvin Simon & Assocs., Inc.,* 640 N.E.2d 382, 384 (Ind.Ct.App.1994). A motion to dismiss based upon T.R. 12(B)(6) tests the legal sufficiency of a claim, not the facts supporting it. *Sims v. Beamer,* 757 N.E.2d 1021, 1024 (Ind.Ct.App.2001). The standard to be applied is that a complaint is subject to dismissal only when it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *Domain Indus., Inc. v. Universal Pool Supply, Inc.,* 403 N.E.2d 889, 891 (Ind.Ct.App.1980). Matters outside the pleadings cannot be considered; if matters outside the pleadings are considered the motion becomes one for summary judgment. *Id.;* T.R. 12(B). Here, inasmuch as matters outside the pleadings were presented to the trial court, this procedure is more properly characterized as a motion for summary judgment under T.R. 56 converted from T.R. 12(B). *See id.* Thus, the issue becomes whether the grant of summary judgment was proper for the companies.

### II. Richter's Claims

Richter contends that because the trial court's dismissal of the personal injury action provided that it was with prejudice as to "claims presently existing," the wrongful death action did not exist as of the date of the prior dismissal. Thus, Richter claims that res judicata does not apply here because the wrongful death claim was not viable when the previous action was dismissed.

■ We begin our analysis by noting that the doctrine of res judicata bars litigating a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies. *Small v. Centocor, Inc.,* 731 N.E.2d 22, 26 (Ind.Ct.App.2000), *trans. denied.* The principle behind the doctrine is the prevention of repetitive litigation of the same dispute. *Id.* In accordance with *Small,* we have determined that a claim is barred by the doctrine of res judicata if the following four requirements are met:

(1) the former judgment must have been rendered by a court of competent jurisdiction;

(2) the former judgment must have been rendered on the merits;

(3) the matter now in issue was, or could have been, determined in the prior action; and

(4) the controversy adjudicated in the prior action must have been between the same parties to the present suit or their privies.

*Id.*

■ We also observe that either party may move to dismiss a claim and a dismissal with prejudice constitutes a dismissal on the merits. *Ilagan v. McAbee,* 634 N.E.2d 827, 829 (Ind.Ct.App.1994). Thus, a dismissal with prejudice is conclusive of

the rights of the parties and is res judicata as to any questions that might have been litigated. *Id.*

In determining whether res judicata should apply, it is helpful to inquire whether identical evidence will support the issues involved in both actions. *Bojrab v. John Carr Agency,* 597 N.E.2d 376, 378 (Ind.Ct.App.1992); *see, e.g., Small,* 731 N.E.2d at 27 (holding that where the plaintiff's first cause of action was for medical malpractice and the second suit alleged fraud and deceit that arose from the patient's hospitalization, the plaintiff's claims were "intextricably woven" and could have been determined in the first action).

In considering the applicability of res judicata[1] in this case, we note that the Richters initially attempted to dismiss their claims without prejudice. Appellant's App. p. 48–49. However, after hearing argument by the parties, the trial court ordered the dismissal with prejudice as to the companies. Thus, the former judgment was rendered on the merits, thereby satisfying this requirement set forth in *Small.*

Although the Estate asserts that the wrongful death claim filed in January 2002 necessarily differs from the claims that were initially brought in 1997, we note that Terry's alleged exposure to asbestos containing various products manufactured or distributed by the companies, evidence of Terry's development of lung cancer as a result of the alleged exposure to asbestos from the products as well as evidence regarding the allegedly defective products that contained asbestos were issues in both cases. In the action filed in the Allen Circuit court, the Richters alleged negligence and outrageous conduct, strict liability, conspiracy, breach of warranty, and

loss of consortium, all of which were based upon Terry's exposure to asbestos and the subsequent diagnosis of lung cancer. In essence, Richter is now attempting to prove a wrongful death claim by alleging negligence and strict liability based on the same claimed exposures to the products that were asserted in the first action. Therefore, it can be said that the claims brought by Richter and the estate are "inextricably woven" with the first action and could have been litigated in that proceeding.

Be that as it may, Richter goes on to argue that the prior dismissal order applied only to "presently existing" claims. Appellant's Br. p. 5. Put another way, Richter is seemingly urging that because Terry was living when the dismissal order was entered, the wrongful death claim was not yet in existence. As a result, Richter argues that the subsequent claims necessarily survive the earlier order of dismissal. In support of its argument, the Estate directs us to *Holmes v. ACandS, Inc.,* 709 N.E.2d 36 (Ind.Ct.App.1999), *trans. denied,* for the proposition that a wrongful death action cannot arise until the date of death. Appellant's Br. p. 7. In that case, the plaintiff filed a wrongful death claim based upon theories of negligence and strict products liability. We determined that a products liability action for wrongful death resulting from asbestos exposure accrued upon the date of death. 709 N.E.2d at 38. In examining the relevant statute, we noted that "the absence of the word 'death' from [the final clause in Ind.Code § 34–20–3–2(a)] does not signify whether death can or cannot be a subsequent injury." *Id.* at 41. Yet, an individual "can only die or be disabled from asbestos exposure once." *Id.*

---

**1.** There is no dispute as to whether the Allen Circuit Court is a court of competent jurisdiction. Thus, we need not discuss application of the first consideration set forth in *Small.*

Here, it is apparent that Terry's claimed disability from asbestos exposure and the companies' alleged misconduct could have been litigated in the earlier court action. Richter is merely asserting those same claims in the subsequent action that she chooses to label as a wrongful death action. Permitting Richter to re-litigate those claims after Terry's death would effectively grant her a second bite at the apple. The Richters had voluntarily dismissed their claims against the defendants on October 28, 1999, and the companies had prepared in anticipation of that trial. The companies would essentially be penalized in the event that Richter would be permitted to sue them again for the same claims more than two years later. Such a result would violate the spirit of the res judicata doctrine that prevents such conduct. Similarly, were we to rule otherwise in circumstances such as those presented here and allow this case to proceed, the settlement of claims would be unlikely. That is, a case might never be settled until the individual dies. We therefore conclude that the third requirement set forth in *Small* has been satisfied here.

■ Next, we note that Terry's claims brought in the original action involved the same parties as Richter's present claims, thereby satisfying the final requirement for res judicata to apply. In *Small*, we determined that the concept of "privity" described a relationship of parties whose interest in the action are such that they may nevertheless be bound by the judgment in the action. *Small*, 731 N.E.2d at 27–28. The term includes those who control an action and those whose interests are represented by a party to the action. *Id.* at 28. Turning to the specifics, the son of a deceased patient in *Small* initiated an original action as the representative of his father's estate. *Id.* at 25. Thereafter, the son brought a second action on his own behalf that related to his father's hospitalization and death. *Id.* Under the circumstances, it was determined that the son both controlled and had an interest in the first action. *Id.* Thus, we held that the trial court properly determined that the fourth requirement, commonality of parties, was satisfied in determining whether the doctrine of res judicata applied. *Id.* at 28. In the end, we concluded that "Small, the individual, was in privity with Small, the personal representative, and he is bound by the judgment in the prior action." *Id.*

In this case, it is undisputed that Richter was a named plaintiff in the earlier action. As such, she certainly exercised control over that case. Additionally, as a spouse claiming loss of consortium in the earlier action, Richter had a direct interest in that case, and she was in privity with Terry. Because Richter brought this case in her capacity as administratrix to Terry's estate and also as a widow in her own right, the commonality of parties requirement in accordance with the doctrine of res judicata is satisfied here as it was in *Small*. Therefore, we conclude that the trial court properly determined that Richter's action was barred on res judicata principles.[2]

Judgment affirmed.

DARDEN, J., concurs.

SULLIVAN, concurs in result with opinion.

SULLIVAN, Judge, concurring in result.

In my estimation the issue here involved is more correctly determined upon the ba-

---

**2.** Inasmuch as we have decided this case on the basis of res judicata, we need not address Richter's contention that the trial court erroneously determined that her cause of action should be barred on the grounds of collateral estoppel.

sis of issue preclusion as embodied in the doctrine of collateral estoppel. The doctrine of collateral estoppel is closely related to res judicata and has been said to constitute a "branch" of res judicata. But issue preclusion is not identical to claim preclusion. *Wedel v. American Elec. Power Serv. Corp.*, 681 N.E.2d 1122 (Ind.Ct. App.1997), *trans. denied. See also Small v. Centocor, Inc.*, 731 N.E.2d 22 (Ind.Ct. App.2000), *trans. denied; Indiana Ins. Co. v. American Cmty. Servs., Inc.*, 718 N.E.2d 1147 (Ind.Ct.App.1999).

Here, Richter correctly asserts that the wrongful death *claim* was not and could not have been litigated because the damage or injury, i.e. death, had not yet taken place when the earlier personal injury litigation was dismissed. In this regard, I think *Small, supra*, is to be distinguished.[3]

Nevertheless, every issue underlying this wrongful death claim, except the issue of the death itself, was essential to the earlier claim. There is no cause of action if the only issue left for the plaintiff is the issue of death. The issues of negligence, products liability, and lung cancer causation were all essential elements of the earlier claim brought by Richter when he was still alive. Those issues are precluded from being relitigated by application of the doctrine of collateral estoppel.

For this reason I concur in the affirmance of the trial court's judgment.

---

**3.** In *Small*, this court held that Small's 1998 complaint for damages related to the hospitalization and death of his father was barred by res judicata. There, the father's hospitalization and death were the subject of Small's 1994 claim as personal representative of the father's estate which had been dismissed with prejudice. The two claims were identical in the sense that the father's death had preceded the filing of the 1994 lawsuit as well as the subsequent 1998 claim.