72 Cal.Rptr.3d 454 (2008)
159 Cal.App.4th 1391
Judy BOEKEN, Plaintiff and Appellant,
v.
PHILIP MORRIS USA, INC., Defendant and Respondent.
No. B198220.
Court of Appeal of California, Second District, Division Five.
February 11, 2008.
*457 Law Offices of Michael J. Piuze, Michael J. Piuze, Los Angeles; and Kenneth Chesebro for Plaintiff and Appellant.
Horvitz & Levy, Lisa Perrochet, Adam M. Flake, Encino; Shook, Hardy & Bacon, Lucy E. Mason and Patrick J. Gregory, San Franscico, for Defendant and Respondent.
MOSK, J.

INTRODUCTION
In affirming the trial court's judgment of dismissal, we hold that the final adjudication on the merits of plaintiffs loss-of-consortium claim against defendant results in a res judicata bar of plaintiffs subsequent wrongful death action for loss-of-consortium damages against' defendant arising from the same injury to plaintiffs spouse that was the basis of the adjudicated loss-of-consortium claim.

BACKGROUND
In March 2000, Richard Boeken (Mr. Boeken), the husband of plaintiff and appellant Judy Boeken (plaintiff), brought an action against defendant and respondent Philip Morris USA, Inc. (Philip Morris) alleging that cigarettes manufactured by Philip Morris caused Mr. Boeken's terminal lung cancer. Mr. Boeken prevailed in his lawsuit and obtained a judgment *458 against Philip Morris for $5.5 million in compensatory damages and $50 million in punitive damages. (See Boeken v. Philip Morris Inc. (2005) 127 Cal.App.4th 1640, 26 Cal.Rptr.3d 638.) Philip Morris satisfied that judgment.
In October 2000, white Mr. Boeken's lawsuit was pending, plaintiff brought a separate action against Philip Morris seeking damages for loss of consortium. Plaintiff alleged that Mr. Boeken, as a result of his illness, was "unable to perform the necessary duties as a spouse" involving "the care, maintenance and management of the family home" and that plaintiff suffered a "loss of love, affection, society, companionship, sexual relations, and support...." Plaintiff further alleged that Mr. Boeken "will not be able to perform such work, services, and duties in the future," and thus she was "permanently deprived and will be deprived of the consortium of Plaintiffs spouse...." In February 2001, for reasons not indicated in the record, plaintiff voluntarily dismissed her loss-of-consortium claim with prejudice.[1]
In January 2002, Mr. Boeken died of his cancer. In June 2006, plaintiff filed this wrongful death action against Philip Morris pursuant to Code of Civil Procedure section 377.60[2]part of the California wrongful death statute. Plaintiff filed suit in her individual capacity; as trustee of the Richard and Judy Boeken Revocable Trust; and as the guardian ad litem of her minor son, Dylan Boeken. In her individual capacity, plaintiff sought to recover funeral expenses[3] for Mr. Boeken and "[g]eneral damages for the loss of love, companionship, comfort, affection, society, solace, and moral support" that she suffered as the result of Mr. Boeken's death. This appeal concerns only the claim asserted by plaintiff in her individual capacity.
Philip Morris demurred to plaintiffs complaint, arguing that because plaintiffs loss-of-consortium and wrongful death claims were both based on the same primary right, plaintiffs dismissal with prejudice of her loss-of-consortium claim resulted in the res judicata bar of her wrongful death claim. The trial court agreed, concluding that the loss-of-consortium and wrongful death actions sought essentially the same damages. The trial court reasoned that because plaintiff had the opportunity to litigate her right to such damages in her prior action, she was precluded from asserting a cause of action to recover those damages in this lawsuit. The trial court sustained the demurrer without leave to amend as to the claim asserted by plaintiff in her individual capacity. Plaintiff timely appealed.[4]

DISCUSSION

A. Standard of Review
An appeal from a judgment dismissing an action after the trial court sustains a demurrer without leave to amend presents a question of law that we review de novo. (McCall v. PacifiCare of Cal., *459 Inc. (2001) 25 Cal.4th 412, 415, 106 Cal. Rptr.2d 271, 21 P.3d 1189; Batt v. City and County of San Francisco (2007) 155 Cal.App.4th 65, 71, 65 Cal.Rptr.3d 716; Morgan Creek Residential v. Kemp (2007) 153 Cal.App.4th 675, 683, 63 Cal.Rptr.3d 232.) We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (City of Dinuba v. County of Tulare (2007) 41 Cal.4th 859, 865, 62 Cal.Rptr.3d 614, 161 P.3d 1168.) We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (Evans v. City of Berkeley (2006) 38 Cal.4th 1, 6, 40 Cal.Rptr.3d 205, 129 P.3d 394.) We also consider matters that may be judicially noticed, for a complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective. (Ibid.; see § 430.30, subd. (a).) If the facts necessary to show that an action is barred by res judicata are within the complaint or subject to judicial notice, a trial court may properly sustain a general demurrer on that ground. (Tensor Group v. City of Glendale (1993) 14 Cal.App.4th 154, 159, 17 Cal.Rptr.2d 639; Frommhagen v. Board of Supervisors (1987) 197 Cal.App.3d 1292, 1299, 243 Cal. Rptr. 390; Carroll v. Puritan Leasing Co. (1978) 77 Cal.App.3d 481, 485, 143 Cal. Rptr. 772.)

B. Res Judicata and the Primary Rights Doctrine
"`Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.... Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action." (Mycogen Corp. v. Monsanto Co. (2002) 28 Cal.4th 888, 896-897, 123 Cal. Rptr.2d 432, 51 P.3d 297, fn. omitted (Mycogen ); see also § 1908, subd. (a)(2).) "Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. `"Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."` [Citation.] A predictable doctrine of res judicata benefits both the parties and the courts because it `seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration.' [Citation.]" (Mycogen, supra, 28 Cal.4th at p. 897, 123 Cal.Rptr.2d 432, 51 P.3d 297.)[5]
Res judicata applies if (1) the judgment in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties in the prior proceeding. (In re Anthony H. (2005) 129 Cal.App.4th 495, 503, 28 Cal.Rptr.3d 575; Federation of Hillside & Canyon Assns. v. City of Los Angeles (2004) 126 Cal.App.4th 1180, 1202, 24 Cal.Rptr.3d 543; see Busick *460 v. Workmen's Comp. Appeals Bd. (1972) 7 Cal.3d 967, 972, 104 Cal.Rptr. 42, 500 P.2d 1386; Bernhard v. Bank of America. (1942) 19 Cal.2d 807, 810-811,122 P.2d 892.) The doctrine of res judicata not only bars litigation of matters that actually were litigated in the prior action, but also those matters that could have been litigated in that action. (Busick v. Workmen's Comp. Appeals Bd., supra, 7 Cal.3d at p. 975, 104 Cal.Rptr. 42, 500 P.2d 1386.)
Plaintiff does not dispute that the dismissal with prejudice of her loss-of-consortium claim operated as a final adjudication of the merits of that claim. (Johnson v. County of Fresno (2003) 111 Cal.App.4th 1087, 1095-1096, 4 Cal.Rptr.3d 475; Rice v. Crow (2000) 81 Cal.App.4th 725, 733-734, 97 Cal.Rptr.2d 110.) Nor does plaintiff dispute that the parties in her prior and present lawsuits are the same.[6] Thus, the sole issue is whether plaintiffs loss-of-consortium and wrongful death claims constitute the same "cause of action."
For purposes of res judicata, the term "cause of action" refers neither to the legal theory asserted by a plaintiff nor to the remedy the plaintiff seeks. (Mycogen, supra, 28 Cal.4th at pp. 904, 123 Cal.Rptr.2d 432, 51 P.3d 297; Slater v. Blackwood (1975) 15 Cal.3d 791, 795-796, 126 Cal.Rptr. 225, 543 P.2d 593 (Slater.)) Instead, "California has consistently applied the `primary rights' theory, under which the invasion of one primary right gives rise to a single cause of action." (Slater, supra, 15 Cal.3d at p. 795, 126 Cal.Rptr. 225, 543 P.2d 593.) As the California Supreme Court, explained, "The primary right theory is a theory of code pleading that has long been followed in California. It provides that a `cause of action' is comprised of a `primary right' of the plaintiff, a corresponding `primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] ... [¶] As far as its content is concerned, the primary right is simply the plaintiffs right to be free from the particular injury suffered. [Citation.]" (Crowley v. Katleman (1994) 8 Cal.4th 666, 681, 34 Cal.Rptr.2d 386, 881 P.2d 1083; accord, Grisham v. Philip Morris U.S.A., Inc. (2007) 40 Cal.4th 623, 641, 54 Cal. Rptr.3d 735, 151 P.3d 1151; Mycogen, supra, 28 Cal.4th at p. 904, 123 Cal.Rptr.2d ,432, 51 P.3d 297; 4 Witkin, California Procedure (4th ed. 1997) Pleading, § 24, p. 85, quoting Pomeroy, Code Remedies (5th ed.), p. 528 ["`the primary right and, duty and the delict or wrong combined constitute the cause of action'"]; see also Rest.2d Judgments, § 24, com. a, pp. 196-198 [distinguishing between the primary rights theory and the "transactional" theory adopted by Restatement].)[7] A particular injury might be compensable under multiple legal theories and might entitle a party to several forms of relief; nevertheless, it will give rise to only one cause of action. (Crowley v. Katleman, supra, 8 Cal.4th at pp. 681-682, 34 Cal.Rptr.2d 386, *461 881 P.2d 1083; see also Rest.2d, Judgments, § 24, com. c, pp. 199-200.)

C. Plaintiffs Wrongful Death Action Involves the Same Primary Right as Her Prior Loss-of-Consortium Action
The California Supreme Court in Rodriguez v. Bethlehem Steel Corp. (1974) 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 (Rodriguez) recognized the right to recover for loss of consortium arising from tortious injury to one's spouse. Loss-of-consortium damages compensate a plaintiff for the impairment to his or her marital life resulting from the spouse's injury. (Id. at p. 404, 115 Cal.Rptr. 765, 525 P.2d 669; Zwicker v. Altamont Emergency Room Physicians Medical Group (2002) 98 Cal.App.4th 26, 30, 118 Cal.Rptr.2d 912; 2 Dobbs, The Law of Torts (2001) § 310, p. 842.) "The concept of consortium includes not only loss of support or services; it also embraces such elements as love, companionship, comfort, affection, society, sexual relations, the moral support each spouse gives the other through the triumph and despair of life, and the deprivation of a spouse's physical assistance in operating and maintaining the family home. [Citations.]" (Ledger v. Tippitt (1985) 164 Cal. App.3d 625, 633, 210 Cal.Rptr. 814, disapproved on another ground in Elden v. Sheldon (1988) 46 Cal.3d 267, 277, 250 Cal.Rptr. 254, 758 P.2d 582; see also Borer v. American Airlines, Inc. (1977) 19 Cal.3d 441, 443, 138 Cal.Rptr. 302, 563 P.2d 858; Rodriguez, supra, 12 Cal.3d at p. 405, 115 Cal.Rptr. 765, 525 P.2d 669; 2 Judicial Council of California, Civil Jury Instructions No. 3920 (2008 ed.) p. 757 (CACI); Rest.2d Torts, § 693(1), p. 495; id. § 693, com. f, p. 497; see generally 2 Harper et al., Harper, James and Gray on Torts (3d ed.2006) § 8.9, pp. 651-652 (Harper).) Loss of consortium "has been referred to as the loss of `the noneconomic aspects of the marriage relation, including conjugal society, comfort, affection, and companionship.' [Citations.]" (Meighan v. Shore (1995) 34 Cal.App.4th 1025, 1034, 40 Cal. Rptr.2d 744.) Loss-of-consortium damages are defined as noneconomic damages for purposes of Proposition 51 (several liability for noneconomic damages). (Civ. Code, § 1431.2, subd. (b)(2); Wilson v. John Crane. Inc. (2000) 81 Cal.App.4th 847, 863, 97 Cal.Rptr.2d 240 (Wilson.))
California law permits a widow or widower, among others,[8] to recover for what amounts to a loss of consortium as an element of damages in a wrongful death action arising from the death of the plaintiffs spouse. (Krouse v. Graham (1977) 19 Cal.3d 59, 68-70, 137 Cal.Rptr. 863, 562 P.2d 1022; see 2 Harper, supra, § 8.9 at p. 656, fn. 17.) Pursuant to California's wrongful death statute, a decedent's spouse may assert "[a] cause of action for the death of a person caused by the wrongful act or neglect of another...." (§ 377.60.) The spouse may recover, with certain exceptions, "damages ... that, under all the circumstances of the case, may be just...." (§ 377.61.) [9] These include (1) direct pecuniary loss, such as loss of financial support from the decedent; (2) loss of services, advice or training; (3) funeral expenses; and (4) of particular relevance *462 to this case, noneconomic loss consisting of the loss of the decedent's love, companionship, comfort, affection, society, solace or moral support. (Krouse v. Graham, supra, 19 Cal.3d at pp. 68-70, 137 Cal.Rptr. 863, 562 P.2d 1022; Rufo v. Simpson (2001) 86 Cal.App.4th 573, 614, 103 Cal. Rptr.2d 492; 2 CACI No. 3921, supra, pp. 850-851; Haning et al., California Practice Guide: Personal Injury (The Rutter Group 2007) Damages ¶¶ 3:302-3:308, pp. 3-318 to 3-320.)
The elements of damage recoverable in a loss-of-consortium action arising from a nonfatal injury to one's spouse are essentially the same as the elements of noneconomic loss recoverable in a wrongful death action arising from a fatal injury. The California Supreme Court recognized this fact in Krouse v. Graham, supra, 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1022. There, a husband brought a wrongful death action after his wife was struck and killed by a motorist. The trial court instructed the jury that the husband could recover, as wrongful death damages, for "the loss of his wife's `love, companionship, comfort, affection, society, solace or moral support, any loss of enjoyment of sexual relations, or any loss of her physical assistance in the operation or maintenance of the home.'" (Id. at p. 67, 137 Cal.Rptr. 863, 562 P.2d 1022.) The court held that the instruction was proper and that such nonpecuniary damages are recoverable by a spouse in a wrongful death action. (Id. at p. 70, 137 Cal.Rptr. 863, 562 P.2d 10221) Citing Rodriguez, supra, 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669, the court stated, "We note that in California those elements of recovery sought by [the husband] herein clearly would be available to him as `consortium' damages in the usual personal injury action for his wife's injuries." (Krouse v. Graham, supra, 19 Cal.3d at p. 70, 137 Cal.Rptr. 863, 562 P.2d 1022, italics added.)
In Lamont v. Wolfe (1983) 142 Cal. App.3d 375, 190 Cal.Rptr. 874 (Lamont,) a husband joined his loss-of-consortium claim with his wife's personal injury action arising from medical malpractice. (Id. at p. 377, 190 Cal.Rptr. 874.) The wife died of her injuries while the action was pending. The husband delayed filing a wrongful death claim for more than a year, believing that amendment was unnecessary because his claim was already before the court. When the husband realized his error and amended his complaint to state a wrongful death claim, the one-year limitations period had expired. The trial court sustained the defendants' demurrer on limitations grounds. (Id. at p. 378, 190 Cal. Rptr. 874.) The court of appeal reversed, holding that the husband's wrongful death claim related back to his original loss-of-consortium claim. "The injuries suffered by [husband] as husband suing for loss of consortium and as heir suing for wrongful death are personal to him and include the same elements of loss of love, companionship, affection, society, sexual relations, and solace." (Id. at p. 380, 190 Cal.Rptr. 874.) The court rejected the defendants' argument that it was illogical to relate the wrongful death claim back to a loss-of-consortium action that was filed while the wife was still alive-that is, to a time before the wrongful death claim had accrued. "This argument," the court said, "ignores the fact that in both claims [husband] is seeking recovery for essentially the same loss.... [U]nder the circumstances of this case it [that is, the wrongful death claim] is not a wholly different cause of action but more a continuation under a different name of the original cause of action for loss of consortium." (Id. at pp. 381-382, 190 Cal.Rptr. 874; see Pesce v. Summa Corp. (1975) 54 Cal.App.3d 86, 92, 126 Cal. Rptr. 451 [in applying maritime law the *463 court said, "we can perceive no logical, sound or reasonable basis to differentiate between the case where the husband is killed, as contrasted to injured, in respect to the wife's entitlement to recover for loss of consortium"]; see also American Export Lines, Inc. v. Alvez (1980) 446 U.S. 274, 281, 100 S.Ct. 1673, 64 L.Ed.2d 284 [plurality op. of Brennan, J.] ["there is no apparent reason to differentiate between fatal and nonfatal injuries in authorizing the recovery of damages for loss of society"[10] under general maritime law]; Durham ex rel. Estate of Wade v. U-Haul Intern. (Ind.2001) 745 N.E.2d 755, 766 ["no significant distinction" between loss-of-consortium damages recoverable in a loss-of-consortium action, on the one hand, and in wrongful death action, on the other hand]; compare with Brumley v. FDCC California, Inc. (2007) 156 Cal.App.4th 312, 325, 67 Cal.Rptr.3d 292 [wrongful death and loss-of-consortium claims of decedent's family members did not relate back to the filing of decedent's own personal injury claim for purposes of the rule barring actions not brought to trial within five years of the filing of the original complaint (§ 583.310) because, unlike in Lamont, the decedent's family members had not filed claims in the original lawsuit, but rather asserted their claims by an amended complaint after the decedent died and for "a different type of injury than those that had been alleged by [the decedent] in the original complaint"].)
Plaintiffs wrongful death action is an attempt to revive her prior loss-of-consortium claim. In her complaint for loss of consortium, plaintiff alleged that she had been damaged by Philip Morris's tortious conduct in that it had rendered Mr. Boeken permanently "unable to perform the necessary duties as a spouse" involving "the care, maintenance and management of the family home" and that she suffered a "loss of love, affection, society, companionship, sexual relations, and support...." In her wrongful death action, plaintiff alleged that she was damaged by the same tortious conduct of Philip Morris in that she had been deprived of Mr. Boeken's "love, companionship, comfort, affection, society, solace, and moral support." Thus, plaintiff sought in her wrongful death action to recover against the same defendant for the same injury caused by the same conduct, as in her prior loss-of-consortium action. Plaintiffs wrongful death action is therefore barred by the doctrine of res judicata.
Our conclusion is consistent with an authority dealing with the precise issue raised here. In Richter v. Asbestos Insulating & Roofing (Ind.App.2003) 790 N.E.2d 1000 (Richter,) a former worker suffering from lung cancer brought a personal injury action alleging that his cancer was caused by exposure to asbestos. (Id. at p. 1001.) His wife joined a loss-of-consortium claim in that action. (Id. at p. 1004.) After the worker and his wife settled their claims against some defendants, the worker and his wife consented to the dismissal with prejudice of their claims against other, nonsettling defendants. (Id. at p. 1001.) After the worker died, his widow brought wrongful death claims against some of the nonsettling defendants, both in her individual capacity to recover damages for loss of consortium *464 and on behalf of her husband's estate to recover for his personal injuries. (Ibid.) The defendants moved to dismiss the complaint on the ground that the dismissal with prejudice of the prior personal injury claims was res judicata as to the widow's wrongful death claims. (Id. at pp. 1001-1002.)
The Indiana Court of Appeal agreed with the defendants. (Richter, supra, 790 N.E.2d at pp. 1001-1002.) The widow's wrongful death action involved the same claim against the same defendants and arose from the same injury asserted in the prior personal' injury action. (Id. at pp. 1003-1004.) The widow argued that the dismissal of the prior action could not be res judicata of her wrongful death claims because, as the husband was still alive at the time, the wrongful death claims had not yet accrued. The court rejected that argument, reasoning that each of the widow's claims "could have been litigated in the earlier court action. [The widow] is merely asserting those same claims in the subsequent action that she chooses to label as a wrongful death action. Permitting [the widow] to re-litigate those claims after [her husband's] death would effectively grant her a second bite at the apple." (Id. at p. 1004.) The court therefore concluded that the doctrine of res judicata barred the widow's wrongful death action.[11] (Ibid.)
In her wrongful death action, plaintiff did not seek to recover economic loss, such as the loss of Mr. Boeken's financial support. Presumably, any such injury to plaintiff in her individual capacity was compensated by Mr. Boeken's substantial recovery in his personal injury action.[12] We do not hold that the final adjudication of a loss-of-consortium claim arising from a spouse's injury would bar a subsequent wrongful death action to recover economic losses arising from the spouse's death.
Plaintiff contends that California courts have recognized in prior decisions that loss-of-consortium claims and wrongful death actions are distinct and separate causes of action. The cases cited by plaintiff, however, are inapposite. Those cases do not discuss res judicata or the primary rights doctrine, nor do they provide analogies useful here.
Plaintiff relies on Wilson, supra, 81 Cal. App.4th 847, 97 Cal.Rptr.2d 240. In that case, a worker suffering from mesothelioma brought a personal injury action against manufacturers of products that contained asbestos; the worker's wife joined her own claim for loss of consortium. (Id. at pp. 850-851, 97 Cal.Rptr.2d 240.) The worker and his wife settled their claims against various manufacturers for approximately $1.1 million. Those settlements allocated the settlement proceeds as follows: 60% for the worker's personal *465 injury claim, 20% for the wife's loss of consortium claim, and 20% to potential wrongful death claims by the worker's heirs. With respect to the latter, the worker and his wife undertook to hold the manufacturers harmless from any wrongful death claims later brought against them by the worker's heirs. (Id. at p. 859, 97 Cal.Rptr.2d 240.)
The worker and his wife proceeded to trial against only one defendant; they prevailed, with the jury allocating 2.5% of the fault to the defendant. (Wilson, supra, 81 Cal.App.4th at p. 851, 97 Cal.Rptr.2d 240.) The worker was awarded $590,000 in economic damages and $3 million in noneconomic damages; his wife was awarded $1 million in damages for loss of consortium. (Id. at p. 851, 97 Cal.Rptr.2d 240.) Pursuant to Civil Code section 1431.2, the damage awards against the defendant for noneconomic loss, including the wife's loss of consortium, were reduced to 2.5% of the total (that is, to $75,000 for the worker's noneconomic loss and $25,000 for the wife's loss of consortium) to reflect the defendant's proportional share of responsibility. (Id. at pp. 851-852, 97 Cal.Rptr.2d 240.)
The defendant then sought to obtain credits against the worker's $590,000 award for economic damages for amounts the worker and his wife had received in settlement from other manufacturers. (Wilson, supra, 81 Cal.App.4th at pp. 859-860, 97 Cal.Rptr.2d 240.) The court held that the defendant was not entitled to a credit for settlement amounts allocated to future wrongful death claims because the worker's personal injury claim belonged to the worker, but any future wrongful death claim would belong to the worker's heirs (including his three children) to compensate them for their loss if the worker eventually died of his injuries. (Id. at pp. 861-862, 97 Cal.Rptr.2d 240.) The economic damages awarded to the worker were to compensate the worker for damages suffered by him during his lifetime, and thus did not include a component for his heirs' future wrongful death claims. (Id at p. 860, 97 Cal.Rptr.2d 240.) The court stated that the heirs would not be entitled to obtain a double recovery in any future wrongful death action, if the heirs actually or constructively received settlement sums paid to the worker in settlement of those claims. (Id. at pp. 862-863, 97 Cal.Rptr.2d 240.) The court also held that the defendant was not entitled to a credit for settlement sums allocated to his wife's claim for loss of consortium because such sums were noneconomic damages, and defendant was entitled to a credit only against the worker's award of economic damages. (Id. at pp. 863-864, 97 Cal. Rptr.2d 240.) Wilson, which deals with credits for settlement payments, does not suggest that a spouse's loss-of-consortium claim arises from a primary right different than her wrongful death claim for harm to her marital relationship.
Dominguez v. City of Alhambra (1981) 118 Cal.App.3d 237, 173 Cal.Rptr. 345 is not helpful to plaintiff. In that case, the court held that a survival action filed after the limitations period expired did not relate back to the filing of an earlier wrongful death action. The survival action was "wholly distinct" from the wrongful death action because the former was to recover for injuries suffered by the decedent prior to his death, whereas the latter was "by the heirs ... and is for the loss of support, comfort and society suffered independently by the heirs...." (Id. at p. 243, 173 Cal. Rptr. 345, italics added; see also 2 Harper, supra, § 8.9 at pp. 658-659.)
Lantis v. Condon (1979) 95 Cal. App.3d 152, 157 Cal.Rptr. 22 (Lantis ), also relied upon by plaintiff, was a loss-of-consortium action arising from a traffic collision that injured the plaintiffs husband. *466 (Id. at p. 154, 157 Cal.Rptr. 22.) The defendant contended that the wife's recovery for loss of consortium should be reduced due to the contributory negligence of her husband. (Id. at p. 156, 157 Cal. Rptr. 22). The defendant attempted to analogize to the wrongful death context, in which a decedent's contributory negligence could be asserted as a defense to a spouse's recovery of loss-of-consortium damages. (Id. at p. 158, 157 Cal.Rptr. 22.) The court rejected that analogy, holding that the wife's recovery for loss of consortium was not subject to reduction for the negligence of her spouse. The court said that the rule applying contributory negligence as a defense in wrongful death actions was "an anomaly and an anachronism resulting from the unique historical circumstances surrounding the development of a cause of action which was created entirely by statute." (Ibid.) When originally enacted in 1862, the wrongful death statute permitted a claim by the heirs only to the extent the decedent had a claim;[13] accordingly, courts construing the statute held that the decedent's contributory negligence was (as it was in all negligence actions at the time) a complete bar to recovery by the heirs. (Ibid.) Although the wrongful death statute was later amended to permit recovery "by the decedent's heirs for their own separate and distinct damages," courts continued to permit contributory negligence as a defense because the Legislature had been aware of, and had not expressly altered, the rule. (Ibid.; see Buckley v. Chadwick (1955) 45 Cal.2d 183, 200-201, 288 P.2d 12.) Unlike wrongful death actions, the court reasoned, the right of a spouse to recover for loss of consortium in cases of non-fatal injury was judicially created; the court therefore was not constrained by the historical rule applicable in the wrongful death context. (Lantis, supra, 95 Cal.App.3d at p. 158, 157 Cal.Rptr. 22.)[14] Accordingly, although the court in Lantis recognized the distinct origins of common law loss-of-consortium claims and statutory wrongful death actions, it did not differentiate between the primary right protected by the two legal theories. . Accordingly, Lantis does not assist plaintiff here.
Plaintiff cites Agarwal v. Johnson (1979) 25 Cal.3d 932, 160 Cal.Rptr. 141, 603 P.2d 58 (Agarwal), disapproved on another ground in White v. Ultramar, Inc. (1999) 21 Cal.4th 563, 574, fn. 4, 88 Cal.Rptr.2d 19, 981 P.2d 944. In Agarwal, a former employee brought a federal employment discrimination action against his former employer and a state court action against the employer and individual supervisors for defamation and intentional infliction of emotional distress. (Agarwal, supra, 25 Cal.3d at pp. 944, 954, 160 Cal.Rptr. 141, 603 P.2d 58.) A jury found in favor of the former employee in his state court action, and the trial court entered judgment for the former employee. (Id. at p. 944, 160 Cal.Rptr. 141, 603 P.2d 58.) While the appeal from the state court judgment was pending, the federal court entered judgment against the former employee on his discrimination claim. (Id. at p. 954, 160 Cal.Rptr. 141, 603 P.2d 58.) The defendants *467 in the state court action moved the state appellate court to dismiss the former employee's state action on the ground of res judicata. (Ibid.)
The California Supreme Court held that the federal judgment against the plaintiff did not bar his state court action. Although the two actions arose "from the same set of operative facts," the plaintiff had alleged that the employer had violated different primary rights. (Agarwal, supra, 25 Cal.3d at p. 954, 160 Cal.Rptr. 141, 603 P.2d 58.) The federal action concerned the employer's "employment practices and the corresponding impact on racial minorities" in determining whether the employee's "federal statutory rights against discriminatory employment practices" had been violated. (Id. at p. 955, 160 Cal.Rptr. 141, 603 P.2d 58.) The state action, in contrast, concerned "damages for harm distinct from employment discrimination"that is, harms suffered from the employer's intentional torts of defamation and infliction of emotional distress. (Ibid.) "[T]he significant factor," the court said, "is the harm suffered; that the same facts are involved in both suits is not conclusive." (Id. at p. 954, 160 Cal.Rptr. 141, 603 P.2d 58.) In contrast to Agarwal, plaintiff here asserted in her two actions not only the same operative facts, but the same injury.
Plaintiff argues that her loss-of-consortium claim could not be res judicata as to her wrongful death claim because she could not have recovered in her loss-of-consortium action "future" damages for the time period after Mr. Boeken's death. This assertion is incorrect. A tort plaintiff in California may recover damages to compensate "for all the detriment proximately caused" by the tortious conduct (Civ.Code, § 3333), including future damage proved with reasonable certainty. (Civ.Code, § 3283; 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1552, p. 1026; see Bikun v. AT & T Information Systems, Inc. (1993) 13 Cal.App.4th 976, 995, 16 Cal.Rptr.2d 787, disapproved on other grounds in Lakin v. Watkins Associated Industries (1993) 6 Cal.4th 644, 664, 25 Cal.Rptr.2d 109, 863 P.2d 179.) Plaintiff cites no authority that these principles do not apply to a loss-of-consortium action adjudicated prior to the injured spouse's death.[15] A loss-of-consortium plaintiff may recover damages for the duration of the incapacity giving rise to the loss of consortium; in cases of permanent injury, the plaintiff may recover damage to his or her marital relation for the remainder of his or her married lifethat is, from the date of her spouse's injury to the end of the injured spouse's expected lifespan, as measured from just prior to the spouse's injury.[16]" (See Truhitte v. French Hospital *468 (1982) 128 Cal.App.3d 332, 352-353, 180 Cal.Rptr. 152; see also Rodriguez, supra, 12 Cal.3d at pp. 386, 409, 115 Cal.Rptr. 765, 525 P.2d 669 [approving prayer for general loss-of-consortium damages for nonfatal permanent injury]; Cody v. Peak (1966) 113 Ga.App. 676, 149 S.E.2d 521, 522 [because "the right of consortium exists only during the joint lives of the husband and wife, ... evidence [of the age and life expectancy of both the plaintiff and the injured spouse] is essential to the jury's determination" of loss-of-consortium damages].)[17]
The damages available in a loss-of-consortium action adjudicated prior to the injured spouse's death thus include the damages that would be available as loss-of-consortium damages in a future wrongful death action arising from the same injury. A wrongful death plaintiff may recover loss-of-consortium damages for the amount of time that the plaintiff is deprived by the injured spouse's death of the spouse's consortiumthat is, from the date of the injured spouse's death (which must be at or after the time of injury) until the end of the injured spouse's expected lifespan, as measured from just prior to the spouse's injury. (See Allen v. Toledo (1980) 109 Cal.App.3d 415, 424, 167 Cal.Rptr. 270; see also 2 CACI No. 3921, supra, pp. 850-851.) Because the recoverable damage terminates at the end of the injured spouse's pre-injury lifespan in both loss-of-consortium actions involving permanent injury and wrongful death actions, the damages available to a wrongful death plaintiff for loss of consortium are a portion of the damages available in a common law loss-of-consortium claim adjudicated prior to the injured spouse's death.
Accordingly, as plaintiff in effect concedes, had plaintiff litigated her loss-of-consortium action to judgment and prevailed, she would have recovered all damages from the onset of Mr. Boeken's disability to the date of his expected death, as measured by his life expectancy from just prior to his injury. Thus, when Mr. Boeken subsequently died of his cancer prior to the end of his pre-injury lifespan, plaintiff, in her loss-of-consortium action, already would have been compensated for damage to her marital interests for the period between Mr. Boeken's premature death and the end of his pre-injury lifespanthat is, for the very damage plaintiff seeks in her wrongful death action. Contrary to the 'assumption implicit in plaintiffs argument, plaintiff would never be entitled to recover loss-of-consortium damages for a period beyond Mr. Boeken's expected lifespan, regardless of the legal theory under which she asserted her claim, for the obvious reason that plaintiff would have suffered no loss-of-consortium damage for any such period. (See Durham ex rel. Estate of Wade v. U-Haul Intern., supra, 745 N.E.2d at p. 766 [loss-of-consortium damages under wrongful death statute recoverable only to the extent that "the defendant's [tort] caused or accelerated the death of the [injured] spouse"]; see also Abernathy v. Superior Hardwoods, Inc. (7th Cir.1983) 704 F.2d 963, 972 [a wrongful death plaintiff "cannot claim loss of consortium for a period after [the injured] spouse's death unless the defendant's culpable acts accelerated his death" (italics added) ].)
*469 Plaintiff refers to Restatement Second of Torts section 693, comment f page 497, which includes the statement, "In case of death resulting to the impaired spouse, the deprived spouse may recover under the rule stated in this Section [Action By One Spouse For Harm Caused By Tort Against Other Spouse] only for harm to his or her interests and expense incurred between the injury and death. For any loss sustained as a result of the death of the impaired spouse, the other spouse must recover, if at all, under a wrongful death statute." (Italics added.)
Contrary to plaintiffs assertion, the comment does not purport to limit recovery in an actionas plaintiffs prior loss-of-consortium actionbrought and finally adjudicated before the injured spouse's death. In a case finally adjudicated before the injured spouse's death, the actual date of the injured spouse's death will be unknown when the judgment is rendered. Comment f appears to concern cases adjudicated after an injured spouse's death. (See Hatch v. Tacoma Police Dept. (2001) 107 Wash.App. 586, 27 P.3d 1223, 1225 & fn. 11 [in action brought after injured spouse's death, plaintiffs commonlaw loss-of-consortium claim limited to damages prior to spouse's death]; Bridges v. Van Enterprises (Mo.App.1999) 992 S.W.2d 322, 325-326 [in action brought after injured spouse's death, wrongful death plaintiff may assert separate common law claim for loss-of-consortium damages for period between spouse's injury and death when such damages not compensable under Missouri wrongful death statute]; Novelli v. Johns-Manville Corp. (1990) 395 Pa.Super. 144, 576 A.2d 1085, 1087 [injured spouse died while loss-of-consortium action was pending; damages limited to period prior to injured spouse's death]; see also Durham ex ret. Estate of Wade v. U-Haul Intern., supra, 745 N.E.2d at pp. 764-765 [noting, in action brought after injured spouse's death, that "common law recovery for loss of consortium damages is limited to the period between the spouse's injury and the spouse's death," but loss of consortium due to injured spouse's premature death "is a proper element of damages in a wrongful death action"].) The rule limiting recovery to pre-death damages in common law loss-of-consortium actions adjudicated after the injured spouse's death derives from the traditional common law rule extinguishing personal injury claims upon the injured party's death. (See McLaughlin v. United Railroads of San Francisco (1915) 169 Cal. 494, 495-496, 147 P. 149; 6 Witkin, Summary of Calif. Law, supra, § 1377, at p. 797 ["At common law, a right of action for injuries to the person did not survive the death of ... the person injured"]; see also Durham ex rel. Estate of Wade v. Haul Intern., supra, 745 N.E.2d at p. 764; Rest.2d Torts, § 925, com. a, pp. 527-528.) That rule has no application when, as plaintiffs prior loss-of-consortium action, the claim is brought and adjudicated prior to the injured spouse's death.
Finally, plaintiff argues that applying res judicata to bar her wrongful death action would deprive her of due process because, when she dismissed her loss-of-consortium claim in 2001, she had no "tenable basis" to believe she could assert a claim for loss-of-consortium damages caused by Mr. Boeken's death. Civil Code section 3283, however, has authorized tort plaintiffs to recover prospective damages since 1872. Furthermore, plaintiff, in her loss-of-consortium complaint, alleged that Mr. Boeken would be unable "to perform [his] work, services, and duties in the future," and that she had been "permanently deprived" of his consortium. She thus not only had a "tenable basis" to assert a claim for loss-of-consortium damages for the remainder *470 of Mr. Boeken's expected lifespan, but she in fact asserted such a claim.

DISPOSITION
The judgment is affirmed. Philip Morris is to recover its costs on appeal.
I concur: ARMSTRONG, J.
TURNER, P.J.
I respectfully dissent. In my view, the demurrer should not have been sustained because the prior dismissal of the common law consortium loss claim of plaintiff, Judy Boeken, does not bar her from recovering any damages sustained after her husband's death. No doubt, there are res judicata consequences of plaintiffs dismissal of her prior common law consortium loss complaint. But I disagree with the assertion of defendant, Phillip Morris USA, Inc., that the dismissal of the prior common law consortium loss claim bars any recovery on plaintiffs statutory wrongful death cause of action.
As my colleagues explain: California's res judicata doctrine is based on the primary right theory; the primary right is the plaintiffs right to be free from the particular injury suffered; and one injury gives rise to only a single claim for relief. (Mycogen Corp. v. Monsanto Co. (2002) 28 Cal.4th 888, 904, 123 Cal.Rptr.2d 432, 51 P.3d 297; Crowley v. Katleman (1994) 8 Cal.4th 666, 681, 34 Cal.Rptr.2d 386, 881 P.2d 1083.) If the plaintiff has litigated, or had opportunity to litigate the same cause of action in the prior litigation, then the second lawsuit is barred on res judicata grounds. (Palma v. U.S. Industrial Fasteners, Inc. (1984) 36 Cal.3d 171, 182, 203 Cal.Rptr. 626, 681 P.2d 893; Busick v. Workmen's Comp. Appeals Bd. (1972) 7 Cal.3d 967, 972, 104 Cal.Rptr. 42, 500 P.2d 1386.) Here the injury for res judicata purposes is the decedent's death. (Code Civ. Proc, § 377.60, subd. (a) ["A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: [¶] (a) The decedent's surviving spouse ..." (italics added)]; Jackson v. Fitzgibbons (2005) 127 Cal.App.4th 329, 335, 25 Cal.Rptr.3d 478 ["Our holding is consistent with the purpose of the wrongful death statute, which is to compensate for the loss of companionship and for other losses to specified persons as a result of the decedent's death." (Italics added) ].) As our Supreme Court explained in Horwich v. Superior Court (1999) 21 Cal.4th 272, 283, 87 Cal.Rptr.2d 222, 980 P.2d 927: "Unlike some jurisdictions wherein wrongful death actions are derivative, Code of Civil Procedure section 377.60 `creates a new cause of action in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived. [Citations.]' (6 Witkin, Summary of Cal. Law [ (9th ed. 1988) Torts,] § 1197, pp. 632-633; see also Blackwell v. American Film Co. (1922) 189 Cal. 689, 693-694, 209 P. 999; Brown v. Rahman (1991) 231 Cal. App.3d 1458, 1460-1461, fn. 3, 282 Cal. Rptr. 815.)" Further, plaintiff could not pursue her statutory wrongful death cause of action when she dismissed her common law consortium loss claim. (Justus v. Atchison (1977) 19 Cal.3d 564, 575, 139 Cal. Rptr. 97, 565 P.2d 122, overruled on another point in Ochoa v. Superior Court (1985) 39 Cal.3d 159, 171, 216 Cal.Rptr. 661, 703 P.2d 1; see People v. Giordano (2007) 42 Cal.4th 644, 659, 68 Cal.Rptr.3d 51, 170 P.3d 623.) Only when the decedent died could plaintiff pursue her claims arising from his death. Thus, plaintiff did not have the opportunity to litigate her statutory wrongful death cause of action *471 when she dismissed her common law consortium loss claim or at any time prior to the decedent's death.
The fundamental flaw in defendant's approach is that all of its arguments focus on the similarity in the available remedies and legal theories underlying a common law consortium loss claim and a statutory wrongful death cause of action. Of course, the controlling issues in applying res judicata and primary right principles are those of a separate injury and the inability to pursue the cause of action in a second lawsuit. (Mycogen Corp. v. Monsanto Co., supra, 28 Cal.4th at p. 904, 123 Cal. Rptr.2d 432, 51 P.3d 297; Palma v. U.S. Industrial Fasteners, Inc., supra, 36 Cal.3d at p. 182, 203 Cal.Rptr. 626, 681 P.2d 893.) Our Supreme Court has explained that the availability of multiple legal theories or remedies is irrelevant the issue is the particular injury and the ability to pursue the cause of action in the first lawsuit. (Mycogen Corp. v. Monsanto Co., supra, 28 Cal.4th at p. 904, 123 Cal.Rptr.2d 432, 51 P.3d 297; Palma v. U.S. Industrial Fasteners, Inc., supra, 36 Cal.3d at p. 182, 203 Cal.Rptr. 626, 681 P.2d 893.)
No doubt, plaintiff may be barred from pursuing any damages for pre-death injury. Her dismissal of her common law consortium loss claim may potentially bar any claim for pre-death losses. But as to plaintiffs post-death claims, she may pursue them in her statutory wrongful death cause of action.
NOTES
[1] The complaint and voluntary dismissal in plaintiff's loss-of-consortium action were be* fore the trial court on Philip Morris's request for judicial notice. (Evid.Code, § 452, subd. (d).)
[2] All statutory references are to the Code of Civil Procedure, unless stated otherwise.
[3] Plaintiff has forfeited any claim regarding funeral expenses. (See fn. 12, post.)
[4] Plaintiff filed her notice of appeal on April 6, 2007, purporting to appeal from the trial court's order sustaining the demurrer. The trial court entered its judgment of dismissal on April 24, 2007. We treat plaintiff's notice of appeal as an appeal from the judgment. (Cal. Rules of Court, rule 8.751(c).)
[5] Res judicata is also known as "claim preclusion." (See Lucido v. Superior Court (1990) 51 Cal.3d 335, 341, fn. 3, 272 Cal.Rptr. 767, 795 P.2d 1223.) In contrast, the doctrine of collateral estoppel, or issue preclusion, bars parties from relitigating, in a second lawsuit on a different cause of action, issues that were litigated and determined in the first action. (Mycogen, supra, 28 Cal.4th at 896, fn. 7, 123 Cal.Rptr.2d 43.2, 51 P.3d 297; Gikas v. Zoliu (1993) 6 Cal.4th 841, 848-849, 25 Cal.Rptr.2d 500, 863 P.2d 745; Lucido v. Superior Court, supra, 51 Cal.3d at p. 341, fn. 3, 272 Cal.Rptr. 767, 795 P.2d 1223.)
[6] Philip Morris USA, Inc., the defendant in this action, was sued in plaintiff's prior action as Philip Morris, Inc. Plaintiff does not dispute that Philip Morris USA, Inc. and Philip Morris, Inc. are, in her words, "one and the same" entity.
[7] There have been other theories. (Note, Developments in the LawRes Judicata (1952) 65 Harv.L.Rev. 818, 824-825; Rest.2d Judgments, § 24, com. a, p. 197; see also Heiser, California's Unpredictable Res Judicata (Claim Preclusion) Doctrine (1998) 35 San Diego L.Rev. 559, 570 [criticizing California's primary rights doctrine].) The result here would be the same under any of the theories.
[8] Section 377.60, subdivisions (a) through (c) specify those persons who have standing to bring a wrongful death action. A loss-of-consortium action in California is limited to the marital relationship. (Borer v. American Airlines, Inc., supra, 19 Cal.3d at pp. 451-452, 138 Cal.Rptr. 302, 563 P.2d 858.)
[9] A decedent's personal representative or successor may recover damages incurred by the decedent before death in a survival action under section 377.34.
[10] "`The term "society"'" includes loss of "`love, affection, care, attention, companionship, comfort, and protection.'" (American Export Lines, Inc. v. Alvez, supra, 446 U.S. at p. 275, fn. 1, 100 S.Ct. 1673.) As recognized by the court in Pesce v. Summa Corp., supra, 54 Cal.App.3d at page 90, 126 Cal.Rptr. 451, there is no discernable difference between "loss of society" and "loss of consortium." (See Krouse v. Graham, supra, 19 Cal.3d at pp. 69-70, 137 Cal.Rptr. 863, 562 P.2d 1022.)
[11] Although the court's analysis in Richter, supra, 790 N.E.2d 1000, focuses primarily on the claim brought by the widow on behalf of her husband's estate, the court's discussion and disposition encompass the widow's individual loss-of-consortium claim. (Id. at p. 1004.) In a concurring opinion, one justice stated the doctrine of collateral estoppel (rather than the doctrine of res judicata) barred the widow from relitigating all of the pertinent issues other than the decedent's death. (Id. at pp. 1004-1005 [cone. op. of Sullivan, J.].)
[12] Plaintiff does not argue that her prayer to recover funeral expenses avoids the application of res judicata to bar her wrongful death claim. She therefore forfeits any such contention. We note that plaintiff sought to recover funeral expenses from Philip Morris in her capacity as trustee of the Richard and Judy Boeken Revocable Trust. The trial court granted plaintiff leave to amend to state that claim with the required certainty. The record does not indicate whether plaintiff has filed an amended complaint.
[13] Statutes 1862, chapter, 330, section 1, page 447. The wrongful death statute was modeled on Lord Campbell's Act. (Buckley v. Chadwick (1955) 45 Cal.2d 183, 190-191, 288 P.2d 12.)
[14] The comparative negligence doctrine now applies in wrongful death actions. (6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1400, pp. 823-824.) Although not relevant to the disposition of this case, the specific holding in Lantis, supra, 95 Cal.App.3d 152, 157 Cal.Rptr. 22, was abrogated, in effect, by Proposition 51 (Civ.Code, § 1431.2). (See Craddock v. Kmart Corp. (2001) 89 Cal. App.4th 1300, 1309-1310, 107 Cal.Rptr.2d 881.)
[15] 2 CACI No. 3920, supra, page 757, on Loss of Consortium, states, "[Name of plaintiff] may recover for harm [he/she] proves [he/she] has suffered to date and for harm [he/she] is reasonably certain to suffer in the future." (Unbracketed italics added.) The "Directions for Use" following this instruction state, "Depending on the circumstances of the case, it may be appropriate to add after `to be suffered in the future' either `during the period of [name of injured spouse]'s disability' or `as measured by the life expectancy that [name of injured spouse] had before [his/her] injury or by the life expectancy of [name of plaintiff], whichever is shorter." (Unbracketed italics added.)
[16] If the plaintiff's life expectancy is shorter than the pre-injury lifespan of the injured spouse, then the damage would be determined as measured by the plaintiff's life expectancy. (Truhitte v. French Hospital (1982) 128 Cal.App.3d 332, 353, 180 Cal.Rptr. 152; see Allen v. Toledo (1980) 109 Cal.App.3d 415, 424, 167 Cal.Rptr. 270; Directions for Use to CACI No. 3920, supra, p. 757.) Life expectancy is a question of fact for the jury. (Allen v. Toledo, supra, 109 Cal.App.3d at p. 424, 167 Cal.Rptr. 270.)
[17] Plaintiff's purported distinction between "pre-death" and "post-death" damages has no merit in the context of loss-of-consortium actions adjudicated prior to the injured spouse's death. Because the injured spouse's life expectancy is computed from just prior to his injury, it is unnecessary in such actions to calculate the diminution in the injured spouse's lifespan caused by the injury or to apportion loss-of-consortium damages to the injured spouse's "lost years."